PILLSBURY WINTHROP SHAW PITTMAN LLP
CALLIE A. BJURSTROM, STATE BAR NO. 137816
MICHELLE HERRERA, STATE BAR NO. 209842
501 W. Broadway, Suite 1100
San Diego, CA  92101-3575
Telephone: (619) 234-5000
Facsimile No.: (619) 236-1995
Email:      callie.bjurstrom@pillsburylaw.com
            michelle.herrera@pillsburylaw.com

Attorneys for Plaintiff
HM ELECTRONICS, INC.

ORIGINAL

14 JAN 24  PM 4: 15

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:        KM        DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HM ELECTRONICS, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> R.F. TECHNOLOGIES, INC., an Illinois corporation, <br><br> Defendant. | No. 12-CV-2884-MMA (WMC) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF HM ELECTRONICS INC.'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT R.F. TECHNOLOGIES, INC. SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH THE ORDER GRANTING PRELIMINARY INJUNCTION** <br><br> Date:     February 24, 2014 <br> Time:     2:30 p.m. <br> Judge:    Hon. Michael M. Anello <br> Crtrm:    3A <br><br> Complaint Filed:  December 4, 2012 |

# Table of Contents

|  | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. OVERVIEW OF DEFENDANT'S VIOLATIONS OF ORDER GRANTING PRELIMINARY INJUNCTION | 2 |
| III. LEGAL STANDARDS REGARDING CIVIL CONTEMPT | 4 |
| IV. RFT SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE ORDER GRANTING PRELIMINARY INJUNCTION | 6 |
| A. RFT Continues its Unauthorized Use of HME's Trademark and its Efforts to Confuse and Mislead Customers Into Believing an Association Exists Between HME and RFT | 6 |
| 1. RFT'S Misuse of HME's Trademarks and its Unauthorized Affiliation With HME on its Website | 6 |
| 2. RFT's Misuse of HME's Trademarks and its Unauthorized Affiliation with HME in its Catalogs | 10 |
| B. RFT Has Failed to Implement Product Labelling and Written Disclosures Required by the Court's Order | 12 |
| C. RFT Continues to Pass Off HME Products as its Own | 13 |
| V. SANCTIONS SHOULD BE IMPOSED AGAINST RFT | 19 |
| A. RFT Should be Ordered to Disgorge its Profits Earned During its Period of Contumacy | 20 |
| B. The Court Should Award HME its Attorneys' Fees Incurred to Compel RFT's Compliance With the Order | 21 |
| C. The Court Should Establish a Schedule of Fines | 22 |
| VI. RFT SHOULD BE DIRECTED TO SUBMIT A SWORN AFFIDAVIT DESCRIBING ITS EFFORTS AT COMPLIANCE | 22 |
| VII. CONCLUSION | 23 |

602147065v2

# TABLE OF AUTHORITIES

Page(s)

## Cases

*U. S. v. City of Jackson, Miss.,*
  359 F.3d 727 (5th Cir. 2004) ........................................................................4

*International Union, United Mine Workers of America v.*
  *Bagwell,*
  512 U.S. 821 (1994) ...............................................................................4, 5

*FTC v. Affordable Media, LLC,*
  179 F.3d 1228 (9th Cir. 1999) .......................................................................5

*Citronelle-Mobile Gathering, Inc. v. Watkins,*
  943 F.2d 1297 (11th Cir. 1991) ....................................................................5

*In re Crystal Palace Gambling Hall, Inc.,*
  817 F.2d 1361 (9th Cir. 1987) .......................................................................5

*Irwin v. Mascott,*
  370 F.3d 924 (9th Cir. 2004) .........................................................................5

*Rolex Watch, U.S.A., Inc. v. Crowley,*
  74 F.3d 716 (6th Cir. 1996) ...........................................................................5

*Schuffler v. Heritage Bank,*
  720 F.2d 1141 (9th Cir. 1983) .......................................................................5

*Howard Johnson Co., Inc. v. Khimani,*
  892 F.2d 1512 (11th Cir. 1990) ........................................................5, 11, 20

*Eskay Drugs v. Smith, Kline & French Laboratories,*
  188 F.2d 430 (5th Cir. 1951) .......................................................................12

*Wolfard Glassblowing Co. v. Vanbragt,*
  118 F.3d 1320 (9th Cir. 1997) .....................................................................12

*U. S. v. United Mine Workers of America,*
  330 U.S. 258 (1947) ....................................................................................19

- ii -

602147065v2

*Leman v. Krentler-Arnold Hinge Last Co.,*
    284 U.S. 448 (1932) ................................................................19, 20

*Jerry's Famous Deli, Inc. v. Papanicolaou,*
    383 F.3d 998 (9th Cir. 2004) ............................................................20

*Manhattan Indus. v. Sweater Bee by Banff, Ltd.,*
    885 F.2d 1 (2nd Cir. 1989) ...............................................................20

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,*
    2002 Dist. LEXIS 16323 (S.D.N.Y. Sept. 3, 2002) ................................21, 22

*Perry v. O'Donnell,*
    759 F.2d 702 (9th Cir. 1985) ............................................................21

*N.L.R.B. v. Vander Wal,*
    316 F.2d 631 (9th Cir. 1963) ............................................................22

<u>Statutes and Codes</u>

18 U.S.C.
    Sections 401-402 ..........................................................................4

720 ILCS 5/17-30 ............................................................................15

Cal. Penal Code
    Section537e....................................................................................15

Lanham Act......................................................................................1, 20

<u>Rules and Regulations</u>

Order, 18:17-21..............................................................................2, 6

Order, 18:22-26.............................................................................2, 12

Order, 18:19-21.................................................................................11

Order, 18:27-19:16............................................................................14

Order, 19:8-16...................................................................................18

# I.

## INTRODUCTION

On October 3, 2013 this Court granted Plaintiff HM Electronics, Inc.'s ("HME") Motion for a Preliminary Injunction. HME moved for a preliminary injunction based on three (3) separate and distinct violations of Sections 32(b) and 43(a) of the Lanham Act by Defendant R. F. Technologies, Inc. ("RFT"). This Court granted the requested relief. In reaching its decision, the Court found that HME established a "strong likelihood of success on the merits as to its section 32(b) claim and its section 43(a) claims under the Lanham Act," that HME "demonstrated it is likely to suffer irreparably [sic] injury to its reputation and goodwill absent injunctive relief," "that the balance of equities tips sharply in Plaintiff's favor," "and that injunctive relief is in the public's interest." (*See* 10/3/13 Order Granting Plaintiff's Motion for Preliminary Injunction ("Order"), 18:10-14.)

In its Order, the Court issued five specific directives to RFT enjoining further acts of infringement and unfair competition. Since the entry of the Order, HME has attempted to monitor RFT's compliance. In so doing, HME has uncovered significant evidence demonstrating that RFT has violated *all five* of the Court's directives, has failed to undertake all reasonable efforts to comply with the Order, and has otherwise blatantly undermined both the intent and spirit of the Order.

Through this application, HME requests that the Court order RFT to show cause (1) why it should not be held in contempt of the Order Granting Preliminary Injunction, and (2) why sanctions in the form of the disgorgement of RFT's profits realized during the period of contumacy should not be imposed. HME also requests an award of attorneys' fees incurred in compelling RFT's compliance with the Order, in an amount according to proof, that RFT be ordered to submit a sworn affidavit describing its efforts to

- 1 -

1  comply with the Order, and that the Court establish a schedule of fines on a

2  going forward basis should RFT continue to fail to comply with the Order.

3                                        **II.**

4  **OVERVIEW OF DEFENDANT'S VIOLATIONS OF ORDER
   GRANTING PRELIMINARY INJUNCTION**

5

6       As stated above, RFT has failed to comply with all five directives set

7  forth in the Court's Order.  The first two directives compel RFT to (1) cease

8  using the HME trademark, or any other mark likely to confuse or mislead

9  consumers, and (2) refrain from representing that it is affiliated with or

10 endorsed by HME in any way. (Order, 18:17-21.)  RFT continues to do both.

11 A review of RFT's website and its published catalogs reveals numerous pages

12 prominently displaying the HME mark and photographs of HME products

13 with statements clearly suggesting an affiliation between RFT and HME.  It is

14 apparent from these advertisements that RFT continues its unauthorized use of

15 the HME trademark and continues to make representations suggesting an

16 affiliation between HME and RFT in an effort to trade on the goodwill

17 associated with the HME brand.  RFT's representations are clearly intended to

18 confuse and mislead customers into believing that RFT can provide new HME

19 drive-thru systems, products and replacement parts as well as authorized repair

20 services when it cannot.

21      The third directive set forth in the Order compels RFT to (1) label HME

22 products that it sells as re-sold, used or refurbished, as the case may be, and

23 (2) provide purchasers with a written disclosure informing them that the HME

24 products sold by RFT are not covered by HME's warranty. (Order, 18:22-26.)

25 RFT has done neither.  RFT continues to sell HME products to customers

26 without the written disclosures ordered by this Court.  RFT's own documents

27 dated well after the entry of the Order demonstrate that RFT is selling HME

28 branded headsets and batteries without labeling the products as re-sold, used

or refurbished as required. RFT is also not providing a written disclosure notifying the customer that the product is not covered by the HME manufacturer's warranty.

The fourth and fifth directives require RFT to cease its practice of re-labeling HME's products and passing them off as its own. RFT continues to do so unabated. These directives, read together and within the context of the entirety of the Court's Order, specify when it is permissible for RFT to remove HME identifying information when repairing HME products, and when it is not. RFT is *not permitted* to re-label HME products with its own labeling when making routine, minor repairs. RFT is certainly *not permitted to routinely re-case and re-label* all HME products sent in for repair. Yet that is precisely what RFT is doing. The Order states that RFT is *only permitted* to re-label HME products on those rare occasions when the replacement of external parts *is required*. RFT is permitted to re-label the product *only* in those limited instances where the modifications are so extensive that it would be a misnomer to continue to call the product an HME product. (*See* Order at p. 14, *citing Rolex Watch, U.S.A., Inc. v. Michel Co.,* 179 F.3d 704 (1999).)

Moreover, in those instances where the replacement of external casings is required and re-labeling is permitted, it is on the condition that RFT assume responsibility for product compliance with all FCC regulations. This provision is designed to protect the public from being confused by the re-labeling of HME's products, to protect the advertising value of HME's brand in the marketplace, and to permit RFT to engage in lawful and fair business activities. This provision also enables the FCC to identify and hold accountable the proper party for problems associated with regulated products.

In direct disobedience of the express language and clear intent of this Court's Order, *RFT has adopted the practice of routinely re-casing and re-labeling HME products, and then passing these products off as its own.* The

only change RFT has made to its unlawful and unfair practices since the Order was issued is to remove HME's FCC certification number from the HME products that it re-labels. Now, instead of returning the re-cased and re-labeled products to customers with HME's FCC certification number intact, RFT returns these re-labeled products to unsuspecting customers *without being re-tested and recertified as required by FCC regulations and without any FCC certification number affixed to the product to identify the party responsible for product compliance*.

RFT's brazen disregard for this Court's Order is astonishing. Its unlawful and unfair practices continue undeterred, and in many respects its conduct has become more egregious, not less. The irreparable harm to HME as a result of RFT's unlawful conduct continues. HME seeks the Court's assistance to enforce its Order and to put a stop to RFT's defiant practices, and to alleviate the ongoing, irreparable harm being suffered by HME as a direct result of RFT's misconduct.

## III.

## LEGAL STANDARDS REGARDING CIVIL CONTEMPT

Failure to obey the terms of a preliminary injunction constitutes contempt of court. Federal Courts have both inherent and statutory authority to punish such contempt and to coerce compliance with their orders. *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831-32 (1994); 18 U.S.C. §§ 401-402.

To establish civil contempt, the movant need only show: (1) a court order was in effect, (2) the order required specified conduct by respondent, and (3) the respondent failed to comply with the court's order. *U. S. v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). A party fails to act as ordered by the court when it fails to take all the reasonable steps within its power to ensure compliance with the court's order. *Schuffler v. Heritage*

*Bank,* 720 F.2d 1141, 1146-47 (9th Cir. 1983).   The party's intent is not relevant as to why the order was violated.   *In re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1987); *see also, Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir. 1990) ("[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue"); *UMW,* 512 U.S. at 831-32 (the failure to comply with the court's order need not be willful).

Once the moving party makes a prima facie showing that a court order was violated, the burden shifts to the respondent to demonstrate a present inability to comply with the order. *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999); *Howard Johnson,* 892 F.2d at 1516.  A summary claim of inability to comply is insufficient; rather, the alleged contemnor must submit evidence to support his claim, and must demonstrate he made, in good faith, all reasonable efforts to comply. *Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1301 (11th Cir. 1991); *see also Rolex Watch, U.S.A., Inc. v. Crowley,* 74 F.3d 716, 720 (6th Cir. 1996) ("[A] defendant must show categorically and in detail why he or she is unable to comply with the court's order")(internal quotations and citation omitted)).

An enjoined party may not challenge the merits of the underlying injunction in a contempt proceeding. *Irwin v. Mascott,* 370 F.3d 924, 931 (9th Cir. 2004)(internal quotations and citation omitted).

# IV.

## RFT SHOULD BE HELD IN CONTEMPT FOR VIOLATING THE ORDER GRANTING PRELIMINARY INJUNCTION

### A.   RFT Continues its Unauthorized Use of HME's Trademark and its Efforts to Confuse and Mislead Customers Into Believing an Association Exists Between HME and RFT

This Court's Order of October 3, 2013 clearly and succinctly prohibits RFT from using the HME trademark or any confusingly similar mark.  It also prohibits RFT from affiliating itself with HME or suggesting, in any manner, that RFT is authorized by HME to sell or repair HME products.  The first two directives in the Order state:

> Defendant *shall not use Plaintiff's "HME" trademark* or any similar mark likely to confuse or mislead consumers.

> Defendant shall not represent that it is affiliated with or endorsed by Plaintiff *in any way*, including an authorized HME distributor, certified HME repair facility, or an "HME Nationwide Repair Facility."

(Order, 18:17-21 (emphasis added).)

Despite the clear and unequivocal language of the Order, RFT continues undeterred in its unauthorized use of the HME trademark on both its website and in its catalogs, in precisely the same manner that prompted HME's motion for preliminary injunction in the first instance.  Likewise, RFT continues to represent that it conducts "Nationwide Repairs for HME" and to affiliate itself with HME in a manner that clearly suggests it is authorized by HME to sell and service HME products when it is not.

### 1.   RFT'S Misuse of HME's Trademarks and its Unauthorized Affiliation With HME on its Website

Attached as Exhibit A to the Declaration of Callie A. Bjurstrom ("Bjurstrom Decl.") are pages from RFT's website printed on January 22, 2014, over three months after the Court issued its Order.  As seen

on page A-7, RFT liberally uses the HME mark, a photograph of the HME Odyssey IQ headset and HME product names, including the bold texting of the same to draw the customer's attention to all things "HME." RFT deliberately leads customers to believe that it can provide new HME drive-thru systems, products and replacement parts, as well as HME authorized repair services. The following language appears on RFT's website, directly beneath a photograph of an HME Odyssey headset:

> ***HME (HM Electronics) drive thru communication systems products and services including HME Replacement Parts: headsets, batteries, battery chargers, base stations, timers and more for the HME ION IQ, Odyssey, HME COM6000, HME COM400, HMECOM2000 and additional legacy equipment.***

> R.F. Technologies Inc. provides everything you need, including HME Replacement Parts to keep your HME systems running smoothly. From replacement headsets and belt-packs to batteries and chargers, we also provide full repair and refurbishment services as well as on-site service and installation for all HME headsets and belt-packs.

(*See* Exh. A-7 to Bjurstrom Decl. (emphasis in original).)

By stating that RFT "provides everything you need, including HME Replacement Parts" immediately following a listing of every type of HME system and product available, the customer is clearly misled into believing that RFT is an authorized provider of HME products and services. It is not. As for "HME Replacement Parts," which RFT specifies as including headsets, batteries, battery chargers, base stations and timers, again the customer is led to believe that RFT can provide new, authorized HME products and replacement parts when it cannot. Nor can RFT provide authorized service and installation for HME systems and products as it suggests because RFT is not an HME authorized repair facility. The textual and visual representations published on this webpage directly and contumaciously violate the Order.

RFT makes a number of additional representations on its website that violate the Court's Order in a similar fashion.  RFT blatantly displays the HME trademark and HME product names in conjunction with text that clearly suggests RFT is authorized to provide HME products and services.  The offensive representations are highlighted.

> Need HME headsets and batteries?  Take advantage of our Buy 3, Get 1 FREE HME Battery Sale and our 2 for $130.00 HME headsets.

(Exh. A-8 to Bjurstrom Decl.)  RFT is not authorized to sell HME batteries or HME headsets.  To the extent it is offering to sell HME products but is instead providing the unsuspecting customer with a "knock-off" product instead of an HME product, RFT is engaging in a classic bait and switch through its unauthorized use of the HME trademark and its impermissible affiliation of itself with HME.

> HME Systems, parts and accessories [photographs suggesting the HME parts and accessories offered for sale are the 6000 Charger, 400 Charger, COM400 Battery, 2000 Charger, COM2000 Battery, etc.].

(Exh. A-8 to A-13 to Bjurstrom Decl.)  Again, RFT is suggesting that it can sell HME Systems, parts and accessories and identifies those products through photographs and the use of HME model numbers.  RFT is not authorized to sell these HME parts and accessories (or any others for that matter).

**HME Replacement Parts**

> R.F. Technologies, Inc. carries drive thru replacement parts for your HME COM2000, HME COM 6000, HME COM400, HMECOM3000, HME IQ, HME ION, HME Odyssey system

(Exh. B-15 to Bjurstrom Decl., and listing of products through B-20.)  The clear impression left by this advertisement is that RFT can provide HME replacement parts for the HME Systems and equipment listed when it cannot.

**Batteries:  Power Can Make A Difference**

> See below to purchase the following models:  3M XT-1, 3M C1060, HME 6000, HME Odyssey, HME ION, HME COM400, HME COM2000, Panasonic 920/1020, Panasonic 2020, Panasonic 2050, Panasonic Attune

(Exh. C-22 to Bjurstrom Decl; and products listed through C-26.)  As stated, RFT cannot sell new HME batteries for the HME products identified.  To the extent it is sending unsuspecting customers RFT knock-off batteries, it is engaging in a bait and switch through the unauthorized use of the HME trademark and its impermissible affiliation of itself with HME.

**Base Stations**

> Need a replacement base station?  RFT carries 3M, Panasonic, HME and Quail Digital Base Stations.

(Exh. D-29 to Bjurstrom Decl.)  RFT is not authorized to sell HME Base Stations.  Again, it is improperly using the HME trademark and affiliating itself with HME in violation of the Court's Order.

RFT goes so far as to maintain an entire separate section on its website devoted exclusively to marketing alleged HME products for sale and soliciting repair orders, http://rftechno.com/hme/, and where it touts its purported ability to sell "HME Systems, parts and accessories."  (*See* Exh. E to Bjurstrom Decl.)[1]  A click on the first link at the bottom of the HME page under "Nationwide Drive Thru Solutions" entitled "Drive-Thru Equipment Repair" takes you to a page where RFT blatantly touts its ability to perform "Nationwide Repairs" to the HME Odyssey I.Q. & ION Belt Pack products and displays a photograph of the HME Odyssey I.Q. headset *relabeled with*

---

[1] HME invites the Court to visit the "HME" section of RFT's website to gain a full appreciation of it visual and textual representations.

*the RFT logo![2]*   This same advertisement states that RFT also conducts "Nationwide Repair[s]" to HME's Legacy Equipment and identifies that Legacy Equipment.   As for some of the Legacy Equipment, RFT expressly states that it can sell those HME products as "New."   (*See* the reference to the HME COMM 2000 Belt Pack and HME Battery Chargers.)

Without question RFT continues on its website to use the HME trademark, HME product names and photographs, and HME product model numbers in a manner intended to deceive and confuse customers into believing that RFT can provide new HME systems, products and parts, and can provide authorized repairs to HME equipment when it cannot.   RFT blatantly continues to affiliate itself with HME thereby suggesting that it is endorsed and/or approved by HME when it is not.   RFT's website clearly violates the Court's Order and RFT should be held in contempt for its failure to comply with the same.

**2.   RFT's Misuse of HME's Trademarks and its Unauthorized Affiliation with HME in its Catalogs**

The statements on RFT's website are damning in and of themselves.   To further aggravate matters, RFT has continued to publish and distribute product catalogs that contain advertisements that likewise blatantly violate the Court's Order.   Attached to the Declaration of Daren Haas as Exhibit A are excerpts from a catalog that RFT sent to a customer *after* the Court issued its Order.[3] (Haas Decl., ¶2.)

---

[2] Due to a problem with the RFT website, HME was unable to print the page referenced herein.  Similar representations are made, however, in a product catalog published by RFT after the Court issued its Order.  (*See* Exh. C to Haas Decl.)

[3] The same catalog excerpts attached as Exhibit A to the Haas Declaration are also available on-line at http://ftp.rftechno.com/rftechno/pdfs/spreadscatalog.pdf, and are attached to the Haas Declaration as Exhibit B.

Page 11 of the catalog depicts an HME Odyssey IQ headset and belt pack. (Haas Decl., Exh. A-8.) The heading boasts "NATIONWIDE REPAIRS FOR HME." (*Id.*, *see also* Exh. B to Haas Decl. (same representation made in catalog published on RFT's website).) The second directive set forth in the Court's Order states: "Defendant shall not represent that it is affiliated with or endorsed by Plaintiff *in any way*, including an authorized HME distributor, certified HME repair facility, or an 'HME Nationwide Repair Facility'." (Order, 18:19-21 (emphasis added).) Without question, RFT's proclamation in its catalog that it conducts "NATIONWIDE REPAIRS *FOR* HME" suggests that it conducts repairs *on behalf* of HME, or is otherwise affiliated with or endorsed by HME.

On the very same page that RFT holds itself out as a nationwide repair facility for HME, RFT proclaims that it offers "LEGACY EQUIPMENT NATIONWIDE REPAIR" for several itemized HME products including headsets, belt packs and timers. (Haas Decl., Exh. A-8; *see also* Exh. B to Haas Decl.) This is the same representation discussed above with regard to RFT's website. Later in the catalog, RFT represents that it performs nationwide repairs for drive-thru timers, including those manufactured by HME, and claims to offer HME drive-thru timer products for sale. (Haas Decl., Exh. A-9, and Exh. B.) At the expense of stating the obvious, RFT is not authorized to sell HME drive-thru timer products.

Without question RFT continues to use the HME trademark and to promote itself as a provider of new HME drive-thru systems, parts and replacement parts, and as an HME authorized or affiliated repair facility all in violation of the first and second directives of this Court's Order.

A party preliminarily enjoined from infringing a trademark carries a heavier burden to avoid infringement than a first time offender. *Howard Johnson*, 892 F.2d at 1517. As the former Fifth Circuit explained:

1    [W]here the appellants have been found guilty of infringing the
2    trade-mark rights of others, they should thereafter be required to
     keep a safe distance away from the dividing line between
3    violation of, and compliance with, the injunction. They must do
     more than see how close they can come with safety to that which
4    they were enjoined from doing.

5    *Eskay Drugs v. Smith, Kline & French Laboratories*, 188 F.2d 430, 432 (5th

6    Cir. 1951); *see also Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320,

7    1323 (9th Cir. 1997) (an infringer must keep a fair distance from the "margin

8    line," and should not be permitted to make minimal changes "in order to test

9    the outer boundaries of [the] judgment").

10       Here, it is clear that RFT has undertaken no efforts to keep a safe

11   distance from conduct the Court has already determined to be infringing, and

12   has simply continued to conduct business as usual.  RFT should be held in

13   contempt for its failure to comply with this Court's Order.

14   **B.    RFT Has Failed to Implement Product Labelling and Written
          Disclosures Required by the Court's Order**
15

16       RFT is not an authorized dealer or distributor of HME manufactured

17   products, but it nonetheless offers such products for sale, apparently after

18   purchasing them from a secondary source.  In order to protect consumers from

19   RFT's unauthorized resale of HME products, which voids warranties that

20   accompany original or authorized sales of the products, the third directive set

21   forth in the Court's Order requires RFT to do the following:

22       Defendant shall label all HME products sold by Defendant as re-
         sold, used, and/or refurbished as the case may be.  Defendant
23       shall also provide a written disclosure accompanying each HME
         product that the HME products sold by Defendant are not covered
24       by the HME manufacturer's warranty.

25   (Order, 18:22-26.)

26       HME believes that RFT has failed to properly label HME products it

27   has sold since the Court issued its Order as re-sold, used or refurbished, as the

28   case may be.  HME likewise believes that RFT is not providing customers

with the required written disclosure informing them that HME-manufactured products they purchase from RFT are not covered by HME's factory warranty. While the Court did not dictate the precise means for implementing these disclosure obligations, disclosures made on RFT's sale invoices were discussed at the hearing on HME's motion (*see* Exh. F to Bjurstrom Decl., p. 21), and this would seem to be the easiest and most efficient way for RFT to satisfy its obligations.  In response to discovery requests, RFT produced invoices for HME product sales occurring after the Court issued its Order. None of the invoices labels the HME products as re-sold, used or refurbished. The invoices purport to sell new HME products.  Moreover, none of the invoices bears the required written disclosure notifying customers that the products are not covered by the HME manufacturer's warranty.  (Exh. G to Bjurstrom Decl.)  Finally, RFT has produced no other documentation in response to HME's discovery requests demonstrating compliance with this directive of the Court's Order. (Bjurstrom Decl., ¶ 11.)

RFT's failure to properly label HME manufactured products that it sells, and its failure to provide the written disclosures regarding the non-applicability of the HME manufacturer's warranty, are inexcusable.

### C.   RFT Continues to Pass Off HME Products as its Own

The fourth and fifth directives set forth in the Order are designed to prevent RFT from passing off products manufactured by HME as if they were RFT products:

> [W]hen Defendant's service or repair of an HME product does not alter external parts, including but not limited to headset casings, overlay, or buttons, Defendant shall not re-label the HME product with Defendant's logo.  Instead, Defendant shall return the product to the customer with the HME name, HME model name and number, HME serial number and HME FCC Identification number displayed on the product in substantially the same location and in substantially the same manner as before the repair.

However, when, in the course of servicing or repairing an HME product, Defendant determines that a headset casing, overlay, buttons or other external parts *require* replacement and Defendant elects to use its own replacement part, Defendant shall remove from the product anything that identifies the product with HME, including the HME name, HME model name and number, HME serial number and HME FCC Identification number. ***Defendant shall thereafter be responsible for the operation of the product and for compliance with all FCC regulations or requirements applicable to the product.***

(Order, 18:27-19:16 (emphasis added).)

The purpose of these directives is to ensure that RFT "refrain[s] from…re-labeling Plaintiff's products when making only minor repairs." (*Id.* at 17:18-19). The Court's Order is clear: When the repairs RFT makes to an HME product do not *require* the alteration or replacement of external parts, RFT *cannot* re-label the product with its own logo. Instead, after the product is repaired RFT must return it to the customer as received, with HME's logo, model name and number, serial number and FCC identification number intact.

During the hearing on HME's motion for preliminary injunction, RFT's counsel led the Court to believe that RFT replaces external casings only when the customer *asks* RFT to do so. (Transcript, Exh. F to Bjurstrom Decl., 4:20-22 ("…depending upon what the owner of that particular device wants, my client simply complies with them"); 6:24-25 (replaced casings are "merely alterations requested by the customers").) In what appears to be an effort to sidestep the Court's directives altogether, RFT has adopted a practice of ***replacing the casing on nearly every HME product it repairs*** with a casing bearing RFT's own logo as a matter of course, whether or not the casing is damaged and whether or not the customer requests that it be replaced.

On January 7, 2014, RFT produced an Excel spreadsheet that purportedly shows the record of invoices for RFT's repair of HME headset products since January 1, 2008. The portion of the spreadsheet reflecting invoices from October 3, 2013, the date the Court issued its Order, to

December 26, 2013, is attached to the Bjurstrom Declaration as Exhibit H.  In the eighth column from the left, the HME product repaired is identified. "HS6000" is HME's model number for its Odyssey IQ headset.  The fourth column from the right reflects that *nearly every time RFT charged a customer to repair an HS6000,[4] RFT performed a "Renew + Repair Service Refurb[ish]."*  The second column from the right, which describes the repairs performed by RFT, reflects that *a "Renew + Repair Service Refurb[ish]"includes the replacement of the external casings for the HS6000.[5]*  During the 12-week period following the Court's issuance of its Order, RFT replaced the casings of over 500 HME HS6000 headsets and replaced them with casings bearing the RFT logo.  Moreover, the sixth column from the right reveals that *RFT routinely affixes a new RFT serial number to the HS6000 headsets it repairs.*  Removing the manufacturer's serial number from a product is a criminal offense under both California and Illinois law.[6] *See* Cal. Penal Code §537e; 720 ILCS 5/17-30.

RFT's own records plainly reveal that RFT replaces the casings for HME HS6000 headsets it repairs as a matter of course, and brands them as its own.  HME's independent investigation has reinforced this conclusion, and has revealed that RFT engages in the very same practice when repairing other products manufactured by HME.  In November 2013, for example, a QSR customer sent three HME products to RFT to repair:  two HME Odyssey

---

[4] Some invoices for the repair of an HS6000 reflect a zero dollar amount. HME believes these repairs fell under a product warranty or service/maintenance agreement provided by RFT.

[5] The spreadsheet provided by RFT did not include invoices for repairs made to the following HME products:  Com400, Com2000 and Com6000 (belt-pacs), and the ION IQ (another headset model).  HME believes that RFT has adopted the practice of routinely replacing the casings when it repairs these products as well.

[6] RFT is an Illinois corporation and its repairs are performed at its facility in Bethalto, Illinois.

headsets, model HS 6000, and one HME "red" belt-pac, model COM6000. (Haas Decl., ¶7.)  The customer did not ask RFT to replace the casings for these products, but RFT did so anyway (and charged the customer). (*Id.*)  As shown in the photographs attached to the Haas Declaration as Exhibit D, RFT removed all HME labeling and branding on the products – the logo on the external casings to the headsets and battery pack, all references to HME's model number, HME's serial number and HME's FCC certification number. RFT replaced the casings with new casings bearing its own logo, and affixed its own serial number to the products.[7]

The products RFT returned to the customer were stripped of any reference to HME and were re-labeled as RFT products, yet the invoices sent to the customer refer to the products by their HME model names HS6000 and Com6000, and affix HME "registration tags." (*See* Exh. D to Haas Decl.) RFT continues to deliberately confuse customers through its unauthorized practices and association of itself with HME.

Yet another QSR customer sent an HME Odyssey headset, model HS 6000, to RFT for repair in November 2013.  (Haas Decl., ¶8.)  The headset was fully functional electronically, but had broken case parts.  Although the headset functioned just fine, RFT removed all labeling identifying it as an HME product.  RFT replaced the HME casing with a casing bearing RFT's own logo and, and although no repairs to any internal components were required or performed, RFT removed HME's serial number identifier affixed to the inside of the headset and replaced it with an RFT serial number. Moreover, RFT removed HME's FCC certification number, and again returned the product to the customer without one.  As before, RFT virtually

---

[7] RFT did not, however, affix its own FCC certification number to any of the products, presumably because it has not been issued one. As discussed below, this only exacerbates RFT's violation of the Order.

stripped the product of any labeling, branding or other identifying information associating it with its manufacturer, HME, yet included an HME "registration tag" when it returned the product to the customer. (*See* Exh. E to Haas Decl.)

As but another example, in October 2013, a QSR customer sent two HME Com6000 belt-pacs to RFT for repair. (Haas Decl., ¶9.) The invoice that accompanied the products when returned to the customer states that they were renewed and repaired (refurbished), and that the cases were replaced. (Exh. F to Haas Decl.) The customer did not request that the cases be replaced. (Haas Decl., ¶9.) When the products were returned to the customer, RFT included a card advising that "Jim L." repaired the customer's "HME Com6000." However, on each product RFT replaced HME's casing with a new RFT-labeled casing, removed HME's serial number and affixed a new RFT serial number, and removed HME's FCC certification number without affixing one of its own. (*Id.*)

The above examples were not isolated instances. To the contrary, a recent repair performed by RFT demonstrates that RFT has adopted the practice of routinely replacing HME casings with its own casings when repairing HME products that continues to the present. In January 2014, a QSR customer provided HME with an HME Odyssey headset, model number HS6000, that was previously repaired by RFT in January 2014. (Haas Decl., ¶10.) Exhibit G to the Haas Declaration depicts pictures of the HME headset *before* it was sent to RFT for repair; Exhibit H to the Haas Declaration depicts pictures of the headset *after* it was repaired by RFT. Again, RFT replaced HME's casing with a casing bearing RFT's logo, replaced the HME serial number with an RFT serial number, and removed HME's FCC certification number without affixing a new or different FCC certification number. The invoice for the repair nonetheless continues to refer to the product by its HME model name – HS 6000. (*See* Exh. H to Haas Decl.)

By routinely replacing the casings on HME products that it repairs and replacing them with its own RFT-branded cases, RFT is directly violating the provisions in the Court's Order that permit RFT to re-case products *only* when the casings are *required to be replaced* in order to repair the product. Moreover, there is no justification at all for RFT's practice of using a casing bearing RFT's logo when its repairs do not in fact require that the casing of an HME product be replaced. A broken casing can also be replaced with a plain casing that bears no RFT logo. It is only when repairs and modifications to a product are so extensive that it would be a misnomer to continue to call the product an HME product that RFT *might* be permitted to re-label the product. (*See* page 14 of the Court's Order *citing Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (1999)(quoting *Champion Spark Plug Co., v. Sanders,* 331 U.S. 125 (1947)) (distinguishing cases "where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words 'used' or 'repaired' were added" from cases in which the "repair or reconditioning of the [products] does not give them a new design. It is no more than a restoration, so far as possible, of their original condition").)

RFT should not be permitted to evade the Court's directives altogether by simply deciding to replace the casing every time it repairs an HME product. Moreover, RFT is also directly violating the Order by stripping HME's products of their FCC certification numbers and returning them to customers without one. The Court instructed RFT that when its repairs to an HME product *require* the replacement of the external casing, RFT shall remove HME's FCC certification number *and thereafter assume responsibility for ensuring that the product is in compliance with all FCC regulations and requirements.* (Order, 19:8-16.) As set forth above, RFT is rebranding the HME products it repairs as its own, and is returning to them customers without

an FCC certification number. RFT is well aware that the drive-thru headset products at issue in this case *require FCC certification.* (*See* Exh. I to Bjurstrom Decl., 10/15/13 letter from T. O'Leary acknowledging that "Federal Communications Commission identification numbers must be placed on any headsets that are marketed to the public.") In discovery, HME asked RFT to produce the certifications issued by the FCC to RFT for drive-thru headset products. RFT has produced no certifications for HME headsets or their component parts. (Bjurstrom Decl., ¶ 12.)

By simply ignoring the FCC rules and regulations that require that the HME products RFT repairs be certified, RFT is doing the exact opposite of what the Court ordered it to do. The end result is that RFT continues to engage in conduct that this Court has already determined constitutes reverse palming-off, continues to deceive and confuse customers, and continues to cause ongoing irreparable harm to HME, its brand and the good will associated with it. RFT's blatant disregard for the Court's Order must be immediately addressed and dealt with severely.

## V.

## <u>SANCTIONS SHOULD BE IMPOSED AGAINST RFT</u>

A district court's discretion in imposing sanctions for civil contempt is particularly broad, and limited only by the requirement that the sanctions be compensatory. *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 452-53 (1932); *U. S. v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). "[J]udicial sanctions may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the plaintiff for losses sustained."

Here, RFT should be ordered to disgorge its profits earned through the sale and repair of HME products during the period it failed to comply with the Court's Order. RFT should also be directed to reimburse the attorneys' fees

and costs incurred by HME to compel RFT's compliance with the Order. Lastly, in order to ensure RFT's compliance with the Order on a going forward basis, the Court should establish a schedule of future fines for non-compliance.

**A.    RFT Should be Ordered to Disgorge its Profits Earned During its Period of Contumacy**

It is well within a district court's discretion, after finding a party in contempt of an order enjoining a defendant from infringing a trademark, to use the infringer's profits as a measure for sanctions. *See Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 2004) ("[D]isgorgement of profits is a traditional trademark remedy and the district court's use of profits as a measure for the contempt sanction is hardly a novel proposition"); *Howard Johnson Co.*, 892 F.2d at 1519 (affirming district court's use of contemnor's profits as a measure of sanctions for civil contempt).

HME need not establish pecuniary loss to obtain an award of RFT's profits as compensatory relief. *Leman*, 284 U.S. at 456-57 (1932); *Howard Johnson Co.*, 892 F.2d at 1521. Moreover, it is not HME's burden to prove RFT's net profits. Once gross profits related to the infringement are established, the contemnor has the burden of establishing any legitimate offsets. *Jerry's Famous Deli*, 383 F.3d at 1005. *See also Manhattan Indus. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, (2nd Cir. 1989) (awarding trademark infringement plaintiff the defendant's net profits during period of civil contempt; burden rests with defendant to establish any cost deductions from its gross revenues attributable to contempt).

In order to accomplish the compensatory goal of both the Lanham Act and the civil contempt sanction,[8] RFT should be ordered to disgorge its profits

---

[8] *See Howard Johnson Co.*, 892 F.2d at 1519.

on the sale and repair of HME products from October 4, 2013 to the date it ceases its contemptuous conduct. RFT should be directed to provide the Court and HME with accurate and independently determined revenue information as a starting point for determining the same. *See, e.g., A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 2002 Dist. LEXIS 16323 at *35 (S.D.N.Y. Sept. 3, 2002) (awarding plaintiff the contemnor's net profits from infringing conduct as a sanction for civil contempt, and directing the contemnor to retain an independent certified public accountant to provide profit information).

### B. The Court Should Award HME its Attorneys' Fees Incurred to Compel RFT's Compliance With the Order

It is likewise well within a district court's discretion to award attorneys' fees to a party who successfully establishes civil contempt. Moreover, "civil contempt need not be willful to justify a discretionary award of fees and expenses as a remedial measure." *Perry v. O'Donnell*, 759 F.2d 702, 704 (9th Cir. 1985). A contrary rule would prevent a party proving contempt from being fully compensated in many cases. *Id.* at 705.

Here, an award of attorneys' fees to HME is appropriate and warranted as compensation for compelling RFT to do what it should have done in the first place – comply with the Court's Order. The Court should find that HME is entitled to an award of attorneys' fees, and should set a further briefing schedule to allow HME the opportunity to submit information sufficient to determine the appropriate amount of the award.

**C.    The Court Should Establish a Schedule of Fines**

The Court should also establish a schedule of fines on a going forward basis should RFT continue to fail to comply with the Order.  It is well within the Court's discretion to do so, and it is a meaningful measure to discourage RFT's from continuing to fail to comply with the Order, and to encourage RFT to satisfy its obligation to undertake all reasonable efforts to comply. *See, e.g., A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 2002 Dist. LEXIS 16323 at *34 (S.D.N.Y. Sept. 3, 2002) (contemnor directed to pay $2,000 per day until compliance achieved); *N.L.R.B. v. Vander Wal*, 316 F.2d 631, 634-35 (9th Cir. 1963) (fine of $100 per day for continued non-compliance with order).

HME submits that a fine of $2,000 per day should RFT continue to fail to comply with the Order is both reasonable and appropriate.

**VI.**

**RFT SHOULD BE DIRECTED TO SUBMIT A SWORN AFFIDAVIT DESCRIBING ITS EFFORTS AT COMPLIANCE**

In order to (1) ensure that RFT undertakes sufficient efforts to comply with the Court's Order and, (2) alleviate the burden on HME to monitor RFT's compliance, the Court should direct RFT to submit a sworn affidavit detailing its efforts to comply with all five (5) directives set forth in the Court's Order. *See, e.g., A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 2002 Dist. LEXIS 16323 at *34 (S.D.N.Y. Sept. 3, 2002) (contemnor required to submit affidavit describing his efforts to delete any infringing references to the plaintiff's trademarks on his websites); *Vander Wal*, 316 F.2d at 634 (requiring contemnor to file sworn statement showing steps taken to comply with court's order).

1  HME requests that the Court direct RFT to submit the affidavit
2  described herein within ten (10) days of the issuance of the Court's Order on
3  this application.

## VII.

## CONCLUSION

6  For all of the reasons stated above, the Court should order RFT to show
7  cause (1) why it should not be held in contempt of the Order Granting
8  Preliminary Injunction, and (2) why sanctions in the form of the disgorgement
9  of RFT's profits realized during the period of contumacy should not be
10 imposed.  The Court should also find that HME is entitled to an award of
11 attorneys' fees, in an amount according to proof, and should establish a
12 schedule of fines to be imposed should RFT continue to fail to comply with
13 the Order.  Lastly, the Court should order RFT to submit a sworn affidavit
14 describing its efforts to achieve compliance with the Order.

15 Dated: January 24, 2014

16                            PILLSBURY WINTHROP SHAW
                              PITTMAN LLP

18
                         By: /s/ Callie A. Bjurstrom
19                              Callie A. Bjurstrom
                                Michelle A. Herrera
20                             Attorneys for Plaintiff
                              HM ELECTRONICS, INC.