UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| HM Electronics, Inc., | Case No. 12cv2884-BAS (JLB) |
|---|---|
| Plaintiff, | **Order Granting in Part and Denying In Part Plaintiff's Motion for Sanctions** |
| vs. | |
| R.F. Technologies, Inc., | **[ECF No. 101]** |
| Defendant. | |

Presently before the Court is Plaintiff HM Electronics, Inc.'s ("HME") motion seeking an award of expenses and sanctions against Defendant R.F. Technologies, Inc. ("RFT") for failing to comply with Magistrate Judge William McCurine, Jr.'s January 27, 2014 Order (ECF No. 71). After careful consideration of all of the papers filed in support of and in opposition to this motion, and the authorities cited therein, Plaintiff's motion is **GRANTED IN PART**.

**I.    Background**

This action involves Plaintiff HME's claims of economic damages and losses arising from Defendant's alleged trademark and trade dress infringement of certain "Drive-Thru Headset Systems." (ECF No. 1.) At issue is Defendant's production of documents responsive to Plaintiff's first set of document requests. Defendant RFT agreed to provide written responses and begin its rolling production of documents responsive to Plaintiff's first set of document requests by October 18, 2013. (ECF No.

101-4 at 2.) Defendant began producing documents on November 25, 2013. (ECF No. 101-6 at 2.) Defendant began its rolling production of documents containing proprietary and confidential information after the Court entered the protective order for this action on December 6, 2013. (*Id*. at 3.) By January, 2014, Defendant RFT's production of documents responsive to Plaintiff HME's first set of document requests remained an outstanding discovery issue between the parties.

Pursuant to court order, the parties jointly lodged a letter with Judge McCurine's chambers on January 22, 2014 containing an updated list of "outstanding issues regarding RF Technologies' production of documents." (ECF Nos. 64, 101-15.) In this letter, Defendant RFT expressly committed to producing certain documents. This joint letter stated that, "[t]he parties request the Court's assistance in setting a reasonable timeline for RF Technologies' production of the additional documents described herein." (ECF No. 101-15 at 2.) On January 27, 2014, Judge McCurine provided this timeline by ordering Defendant to "complete the outstanding document production discussed during the conference no later than February 10, 2014." (ECF No. 71.)

## II. The Instant Motion for Sanctions

After Judge McCurine's January 27, 2014 Order setting Defendant's timeline to complete its document production, Plaintiff filed the instant motion for sanctions against Defendant. Prior to seeking sanctions, on Monday, February 10, 2014, Plaintiff's counsel requested e-mail confirmation from Defendant's counsel that Defendant's "document production will be completed today as Magistrate Judge McCurine ordered." (ECF No. 101-18 at 3.) Defendant's counsel responded, "Emails are being downloaded and placed on a flash drive. . . . They were sent in a large box for delivery Tuesday." (*Id*. at 2-3).

On Tuesday, February 18, 2014, Plaintiff received documents from Defendant. (ECF No. 101-19.) That same date, Plaintiff wrote a letter to Defendant that identified outstanding documents the would still need to be produced to complete the production

ordered by Judge McCurine on January 27, 2014. (*Id*.) Plaintiff's counsel requested an immediate response. (*Id*.)[1]

On February 25, 2014, Magistrate Judge Ruben B. Brooks issued an order directing the parties to meet and confer in person by February 28, 2014 regarding compliance with Judge McCurine's January 27, 2014 Order, as well as on other unresolved discovery issues. (*See* ECF Nos. 83, 84, 98-1, 98-2.) The parties met and conferred as directed and lodged letter briefs regarding the same on March 4, 2014. (ECF Nos. 98-1, 98-2.) On March 11, 2014, Judge Brooks concluded the parties' dispute over, *inter alia*, compliance with the January 27, 2014 Order was "not suitable for resolution at an informal discovery conference" and granted the parties leave to "file a noticed motion on whatever discovery matters they determine appropriate." (ECF No. 98.)

Plaintiff HME filed the instant motion for sanctions on March 20, 2014. (ECF No. 101.) The motion is made on the grounds that Defendant RFT failed to comply with the January 27, 2014 Order. By way of its motion, Plaintiff asks this Court to (1) find Defendant in contempt of court, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vii), for failing to comply with the January 27, 2014 Order, (2) direct Defendant to immediately produce all outstanding documents required by the Order, and (3) impose prospective daily fines against Defendant until it complies with the Order. Plaintiff also requests a mandatory award of expenses incurred as a result of Defendant's failure to comply with the Order, pursuant to Federal Rule of Civil Procedure 37(b)(2)(C).

**A.   Legal Standard**

Federal Rule of Civil Procedure 37(b)(2)(A) sets forth a non-exhaustive list of sanctions that may be imposed against a party who fails to obey a discovery order. For purposes of Rule 37(b) sanctions, the term "order" is interpreted broadly. *Unigard Sec.*

---

[1] Plaintiff's counsel also appears to have received a supplemental production consisting of "e-mail promotions sent out by RFT" on February 20, 2014. (ECF No. 101-2 at 3-4 ¶18.)

*Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). So long as a party has "unequivocal notice that a court has asked that certain documents be produced[,]" the party may be sanctioned for failing to do so. *Id*. (citing *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974)). Further, Federal Rule of Civil Procedure 37(b)(2)(C) provides:

> Instead of or in addition to the orders above [issuing sanctions] the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). "[T]he burden of showing substantial justification and special circumstances is on the party being sanctioned." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). A finding of bad faith is not required for monetary sanctions under Rule 37. *Id.*

**B.   Plaintiff Argues Defendant Failed to Produce Documents Subject to the January 27, 2014 Order**

As outlined below, Defendant violated the January 27, 2014 Order by not completing the document production ordered to occur by February 10, 2014. Defendant's papers do not address the specific document production deficiencies outlined in Plaintiff's motion. Instead, Defendant raises objections to production and labels the January 27, 2014 Order as obsolete. The January 27, 2014 Order is not obsolete, and Defendant should have addressed the issue before the Court – whether Defendant complied with the January 27, 2014 Order.

The record makes clear that the January 27, 2014 Order set a February 10, 2014 deadline for Defendant RFT to complete its production of the documents listed in the parties' joint letter dated January 22, 2014.[2] Plaintiff's motion arises in part from Defendant's failure to do so. The specific failures raised in Plaintiff's motion follow.

/ / /

---

[2] The Court notes that Defendant does not put forth evidence to contest Plaintiff's evidence that at the January 27, 2014 conference, "the *only* thing discussed was the parties' January 22nd joint letter, and a deadline for RFT to produce the documents identified in that letter." (ECF No. 128-1 at 2 ¶4.)

First, Plaintiff contends that Defendant failed to produce its income statement for 2010. Defendant represented to Judge McCurine for purposes of the January 27, 2014 Order that "RFT will produce income statements for years 2010, 2011 and 2012, and 2013 if one has been prepared." (ECF Nos. 101-1 at 4, 101-15 at 4.) In its opposition, Defendant does not dispute Plaintiff's contention or explain why its income statement for 2010 was not produced. This failure violates the January 27, 2014 Order.

Second, Plaintiff contends that Defendant failed to produce a one month sample of Defendant's general ledger. For purposes of the January 27, 2014 Order, Defendant represented to Judge McCurine that "RFT maintains a general ledger on a monthly basis. . . . RFT will produce a one month sample of its general ledger." (ECF No. 101-15 at 3.) In its opposition, Defendant does not dispute Plaintiff's contention or explain why a one month sample of its general ledger was not produced. This failure violates the January 27, 2014 Order.

Third, Plaintiff contends that Defendant failed to produce a one month sample of Defendant's inventory report. For purposes of the January 27, 2014 Order, Defendant represented to Judge McCurine that "RFT maintains an inventory report. RFT will produce a one month sample of its inventory report." (ECF No. 101-15 at 4.) In its opposition, Defendant does not dispute Plaintiff's contention or explain why a one month sample of its inventory report was not produced. As a result, the Court concludes Defendant violated the January 27, 2014 Order.

Fourth, Plaintiff contends that Defendant failed to produce an Excel spreadsheet summarizing Defendant's repairs to HME ION IQ products and invoices. For purposes of the January 27, 2014 conference, Defendant represented to Judge McCurine that "RFT will produce an Excel spreadsheet summarizing repairs and invoices for HME's . . . ION IQ products." (*Id*. at 5.) In its opposition, Defendant states that "it does not electronically store invoices for sales of refurbished HME products, since they are maintained in its Illinois warehouse." (ECF No. 125 at 13.) The Court does not understand this to mean that the promised Excel spreadsheet resides in the Illinois

1  warehouse, nor does it explain why an Excel spreadsheet summarizing repairs and
2  invoices for HME's ION IQ products was not produced as represented to the Court.
3  This failure violates the January 27, 2014 Order.

4       Fifth, Plaintiff contends that Defendant failed to produce an Excel spreadsheet
5  summarizing Defendant's invoices and repairs to products manufactured by Defendant
6  RFT and Panasonic. For purposes of the January 27, 2014 Order, Defendant
7  represented to Judge McCurine that "RFT will produce Excel spreadsheets
8  summarizing invoices and income received in connection with the repair of products
9  manufactured by the following: RF Technologies, Panasonic . . . ." (ECF No. 101-15
10 at 6.) Defendant does not dispute Plaintiff's contention or explain why the promised
11 Excel spreadsheets were not produced. This failure violates the January 27, 2014
12 Order.

13      Sixth, Plaintiff contends that Defendant failed to produce documents indicating
14 repairs made to RF Technologies, Panasonic and 3M products under warranty. (ECF
15 No. 101-1 at 8.) Relevant here is that Defendant represented to Judge McCurine that
16 "RFT counsel will ask RFT if it has documents showing which repairs to the above
17 products were made under warranty." (ECF No. 101-15 at 7.) During the parties'
18 February 28, 2014 meet and confer, Defendant's counsel did not agree that such
19 documents were missing from Defendant's production. (ECF No. 101-20 at 11
20 ("[Herrera:] documents indicating repairs made to R.F. Technology, Panasonic and 3M
21 products under warranty. [O'Leary:] Thought I sent it to you").) Plaintiff has not
22 sufficiently demonstrated that Defendant is withholding documents showing which
23 repairs to the relevant products were made under warranty. Based on the record, the
24 Court is not persuaded that Defendant violated the January 27, 2014 Order on this
25 issue.

26      However, Defendant does not address this purported discovery failure in its
27 Opposition. As a result, by **August 31, 2014**, Defendant's counsel is ordered to
28 provide Plaintiff's counsel with a sworn affidavit from Defendant made under the

penalty of perjury as to whether Defendant completed its production of documents showing which repairs to the above products were made under warranty. If Defendant did complete such a production, then the affidavit must identify Defendant's production on this issue by Bates numbers and make a detailed showing as to whether adequate searches were conducted in response to the January 27, 2014 Order, including an explanation of the search terms, custodians, computer drives, or other locations searched. If Defendant has yet to complete its production on this category, then it must do so no later than **August 4, 2014**. If Defendant never possessed or no longer possesses any responsive documents for this category, then the affidavit must specifically state this fact and explain in detail why.

Seventh, Plaintiff contends that Defendant failed to produce all invoices to date reflecting Defendant's sale of HME products. Specifically, Plaintiff does not have any invoices beyond October 26, 2013. For purposes of the January 27, 2014 Order, Defendant represented to Judge McCurine that "RFT has produced all invoices reflecting RFT's sale of HME products." (ECF No. 101-15 at 7.) In its opposition, Defendant does not dispute Plaintiff's contention or explain why the Plaintiff does not have any invoices beyond October 26, 2013. Furthermore, during the parties' February 28, 2014 meet and confer, Defendant's counsel agreed to supplement its discovery production and produce invoices from October, 2013 forward. (ECF No. 101-20 at 12-13.) Thus, while this failure does not violate the January 27, 2014 Order, Defendant's January 22, 2014 representation to the Court on this issue was false. Therefore, on or before **August 4, 2014**, Defendant shall supplement its document production on this category of documents through the present.

Eighth, Plaintiff contends that Defendant failed to produce the attachments to correspondence from Defendant's counsel to the FCC. For purposes of the January 27, 2014 Order, Defendant represented to Judge McCurine that "RFT will produce the attachments to correspondence from its counsel to the FCC." (ECF No. 101-15 at 10.) During the parties' February 28, 2014 meet and confer, Defendant's counsel stated with

respect to the attachments: "We produced those. I think they may have been produced after your [February 18, 2014] letter. I know they produced them because he sent them to me." (ECF No. 101-20 at 18.) Thus, the attachments were not produced by February 10, 2014. Further, Defendant does not now dispute Plaintiff's contention that the attachments are missing, identify the attachments by Bates number or otherwise, or explain why the Plaintiff still does not have the attachments. As a result, the Court concludes Defendant failed to comply with the January 27, 2014 Order on this issue.

Ninth, Plaintiff contends that Defendant failed to produce invoices from and payments to dealers and distributors from whom Defendant purchased HME products, or a summary spreadsheet. For purposes of the January 27, 2014 Order, Defendant represented to Judge McCurine that "RFT counsel will ask RFT if it can produce invoices from and payments to the dealers and distributors, or a report reflecting the information contained in those documents." (ECF No. 101-15 at 14.) The evidence before the Court is insufficient to determine to whether Defendant's counsel failed to take such action in response to the January 27, 2014 Order.[3] As such, the Court does not conclude that Defendant violated the January 27, 2014 Order on this issue.

However, Defendant does not address this purported discovery failure in its Opposition. As a result, by **August 4, 2014**, Defendant's counsel is ordered to provide Plaintiff's counsel with a sworn affidavit from Defendant made under the penalty of perjury as to whether Defendant completed a production of its electronically stored information containing the requested invoices from and payments to the dealers and distributors, or a report reflecting the information contained in those documents. If Defendant did complete such an electronic production, then it must identify its production by Bates numbers. If Defendant has yet to complete its production on this category, then it must do so no later than **August 4, 2014**.

---

[3] On February 28, 2014, Defendant's counsel represented that these documents exist, stating "We produced what is readily available invoices. Documents and distributors would be with those documents in Illinois." (ECF No. 101-20 at 24.) This does not answer the question as to whether Defendant can produce invoices from and payments to the dealers and distributors, or a report reflecting the information contained in those documents.

Further, if Defendant cannot complete an electronic production for this category of documents, then the August 4, 2014 sworn affidavit shall also set forth in detail: (1) all reasons why Defendant cannot complete such a production; (2) Defendant's policies and procedures for the storage and destruction of electronically stored information during the relevant time period for the documents requested; (3) whether, where, and using what computer program(s) invoices from and payments to dealers and distributors from whom Defendant purchased HME products or a summary spreadsheet containing such information ever existed electronically; (4) whether Defendant can electronically regenerate invoices from and payments to dealers and distributors from whom Defendant purchased HME products or a summary spreadsheet containing such information; and (5) if invoices from and payments to dealers and distributors from whom Defendant purchased HME products or a summary spreadsheet containing such information ever existed electronically, then a detailed explanation of why and when such information was lost or destroyed.

Finally, Plaintiff contends that Defendant failed to produce: (1) orders to, invoices from and communications with suppliers identified in Defendant's interrogatory responses, and any other suppliers that provided parts compatible with HME products to Defendant; and (2) documents concerning the design, manufacture or development of parts compatible with HME products. For purposes of the January 27, 2014 Order, Defendant represented to Judge McCurine that "RFT counsel will ask RFT to search for responsive documents, including those that are electronically stored." (ECF No. 101-15 at 14.) Again, the evidence before the Court is insufficient to determine whether Defendant's counsel failed to take such action in response to the January 27, 2014 Order.[4] As such, the Court does not conclude that Defendant violated the January 27, 2014 Order on this issue.

/ / /

---

[4] Exclusive of the communications requested, Defendant's counsel appears to have represented that the other documents requested exist, stating "they are within the documents that were maintained either in the warehouse or in a file cabinet." (ECF No. 101-20 at 28-30.)

However, Defendant does not address this purported discovery failure in its Opposition. As a result, by **August 4, 2014**, Defendant's counsel is ordered to provide Plaintiff's counsel with a sworn affidavit from Defendant made under the penalty of perjury concerning its document production of (1) orders to, invoices from and communications with suppliers identified in Defendant's interrogatory responses, and any other suppliers that provided parts compatible with HME products to Defendant; and (2) documents concerning the design, manufacture or development of parts compatible with HME products. With respect to these categories of documents, the affidavit shall identify the Bates numbers for the documents produced and make a detailed showing as to whether adequate searches were conducted in response to the January 27, 2014 Order, including an explanation of the search terms, custodians, computer drives, or other locations searched.

Further, for any responsive documents that were not produced on the basis that they reside in Defendant's Illinois warehouse, the affidavit shall also state whether such documents exist electronically. If the documents exist electronically, then they must be produced electronically no later than **August 4, 2014**. However, if an electronic production cannot be completed, then the August 4, 2014 sworn affidavit with respect to these issues shall set forth in detail: (1) any and all reasons why Defendant cannot complete such a production; (2) Defendant's policies and procedures for the storage and destruction of electronically stored information during the relevant time period for the documents requested; (3) whether, where, and using what computer program(s) the categories of documents requested ever existed electronically; (4) whether Defendant can electronically regenerate such documents; and (5) if such documents ever existed electronically, then a detailed explanation of why and when such information was lost or destroyed.

Defendant's overall response the arguments made by Plaintiff is that Defendant cannot be in violation of the January 27, 2014 Order because it is obsolete. Defendant's reasons for unilaterally deeming the Order obsolete appear to include

(1) its subsequent meet and confer efforts with Plaintiff, (2) its continued rolling production of documents despite the burden involved, (3) its offers to make its warehouse of documents in Illinois available to Plaintiff, (4) the fact that this case is no longer before Judge McCurine, and (5) the fact that this discovery dispute and others have been raised before other magistrate judges subsequent to January 27, 2014. Critical here, however, is that Defendant never sought or received relief from or a modification of that order so as to deem it obsolete. The Order still governs this case.

In addition, Defendant overstates the reasonableness of its offers to make its warehouse of documents available for review. The record does not support its suggestion that the documents discussed above (or even a substantial portion thereof) may reside in the warehouse. Instead, Defendant has made overly general, and sometimes inconsistent, representations about which documents responsive to Plaintiff's requests are housed in the warehouse in Illinois. In its December 11, 2013 letter to Judge McCurine, RTF states that it has produced certain documents to Plaintiff, including financial statements, and that "***all other responsive documents*** have been made available for review and inspection as they are maintained in the usual course of business." (ECF No. 125-11 at 3, emphasis added.) In that same letter, RTF asserts that the documents in the warehouse "are responsive ***to the 70 Requests*** for Production." (*Id.*) Yet in response to Judge McCurine's January 13, 2014 Order that Defendant specify the documents or files requested by Plaintiff that are available for review in RTF's warehouse, Defendant identified only documents within repair files and invoices, including invoices for sales and loans of refurbished HME products. (ECF No. 125-14.) In the parties' February 28, 2014 meet and confer, Defendant clarified that documents responsive to Plaintiff's request for communications with dealers would not be in the boxes at the warehouse. (ECF No. 101-20 at 23-24.) But in its instant Opposition to Plaintiff's Motion for Sanctions, Defendant again asserts that the documents in the warehouse are responsive to "'the 70 Requests for Production.'" (ECF No. 125 at 13, quoting RTF's December 11, 2013 letter.)

Moreover, for those documents that might reside at the warehouse, Defendant fails to make a sufficient showing that its offers of access to a warehouse of documents put Defendant in compliance with Federal Rule of Civil Procedure 34 with respect to those documents. *See, e.g., Ultratech, Inc. v. Tamarach Scientific Co.*, No. 03cv3235, 2005 WL 40074, *3 (N.D. Cal. Jan. 5, 2005) ("producing documents as they are maintained in storage is not as the documents are kept in the 'usual course of business'"); *Armor Screen Corp. v. Storm Catcher, Inc.,* No. 07cv81091, 2009 WL 291160, *2 (S.D. Fla. Feb. 5, 2009) ("Rule 34 is generally designed to facilitate discovery of relevant information by preventing 'attempt[s] to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents'").

As discussed in further detail below, Plaintiff shall be awarded expenses under Federal Rule of Civil Procedure 37 resulting from Defendant's violations of the January 27, 2014 Order. Defendant fails to meet its burden of showing there is substantial justification or other circumstances before the Court making an award of reasonable expenses unjust.

    **C.**    **Plaintiff Argues Defendant Failed to Perform Electronic Searches Sufficient to Satisfy the January 27, 2014 Order**

In addition to the categories of documents discussed above, the January 22, 2014 letter addressed the following nine categories of documents:

1. All e-mails and other communications regarding the "HM Electronics IQ Structural Failures" document published by RFT;

2. Documents concerning the factual support for RFT's quality and durability claims;

3. Documents concerning the creation, receipt, use, publication and distribution of the "HM Electronics IQ Structural Failures" document published by RFT;

4. Documents concerning the tests and analyses depicted in the HME Electronics IQ Structural Failures report;

     5. Communications between RFT and any third party regarding HME (i.e. customers, suppliers, vendors, dealers, testing facilities, competitors);

     6. All communications with and invoices from LS Research;

     7. All product comparison documents, and e-mails concerning the same;

     8. Documents supporting RFT's representations regarding post-warranty repair rates and costs for HME products; and

     9. Communications with the dealers and distributors.

As to each of these items, Defendant represented in the January 22, 2014 joint letter that it would undertake further searches for responsive documents. The January 27, 2014 Order required Defendant to complete the outstanding document production with respect to these categories of documents (as well as those discussed in II.B. *supra*) by February 10, 2014.

     Plaintiff argues, and Defendant does not dispute, that by February 4, 2010, the parties had agreed that Defendant would conduct broad-based ESI searches using twenty-two agreed upon search terms. Plaintiff argues that the Court should conclude that Defendant breached this agreement because Defendant did not produce any documents resulting from such ESI searches.[5] As these searches were a means by which Defendant would comply with the January 27, 2014 Order, Plaintiff seeks to hold Defendant in contempt for not conducting the searches.

     Defendant does not address whether it conducted the broad-based ESI searches using the twenty-two agreed upon search terms. Instead, Defendant argues in anecdotal and broad brush terms that "RFT has conducted multiple diligent electronic searches" and "has sought to produce the outstanding documentation requested by HME to this best of its abilities." (ECF Nos. 125 at 6-7; 125-28.) From this, the Court concludes that Defendant failed to conduct broad-based ESI searches using the twenty-two agreed upon search terms.

---

[5]     Plaintiff also provides additional bases for believing that responsive electronic documents should exist in Defendant's files.

However, Defendant's failure to conduct the broad-based ESI searches does not constitute a clear violation of the January 27, 2014 Order warranting Rule 37 sanctions. While the parties may have agreed that this was the best way to put the outstanding document production to rest, the Court is not persuaded on the record before it that Defendant had sufficient notice that its failure to perform the agreed upon searches would violate the Court's Order. Further, the record before the Court does not give rise to the conclusion that the parties had worked out all the details required for Defendant to conduct the searches. For example, the record does not indicate whether the parties agreed on details such as any cost sharing, the custodians to be searched, or whether a third party vendor should be utilized.

In sum, the Court **DENIES** without prejudice Plaintiff's request for sanctions arising from deficiencies in Defendant RFT's electronic production because the record does not sufficiently show that purported failures constitute violations of the January 27, 2014 Order. However, the parties are hereby ordered to finalize their twenty-two search term agreement on or before **July 17, 2014**, and absent leave of Court, Defendant shall complete its ESI searches using the twenty-two agreed upon search terms on or before **August 4, 2014**.[6]

### III.   Expenses Awarded Under Federal Rule of Civil Procedure 37

The Court has determined that the appropriate remedy for Defendant's discovery violations discussed in II.B., *supra*, is an award of reasonable expenses, including attorneys' fees, caused by Defendant's failure to comply with of the January 27, 2014 Order. *See* Fed. R. Civ. P. 37(b)(2)(C). Reasonable attorneys' fees are generally calculated based on the traditional "lodestar" method. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir.2008). Under the lodestar method, the Court determines a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424,

---

[6] The Court takes no position as to which categories of documents the twenty-two search term agreement pertained to, nor should this order be construed as altering the scope of the twenty-two search term agreement reached by the parties.

433 (1983). The lodestar figure is presumptively reasonable. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).

"This Circuit requires that courts reach attorneys' fee decisions by considering some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir .1975)." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir.1988). The *Kerr* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 539 n.1. *See also Hensley*, 461 U.S. at 434. The court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

### A. The Lodestar Calculation: Reasonable Rate

Fee applicants have the burden of producing evidence that their requested fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho*, 523 F.3d at 980. Once a fee applicant presents such evidence, the opposing party "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Id*.

Plaintiff seeks to carry its initial burden by submitting a declaration (ECF No. 180) attesting to counsel's reputation, education, and experience, as well as its basis for contending the fees charged are within the standard in this market for cases of this type and complexity handled by reputable large law firms. Ms. Callie A. Bjurstrom is a Partner in Pillsbury Winthrop Shaw Pittman LLP's intellectual property litigation

1  practice, the leader of Pillsbury's trade secret team and a trial lawyer with over 25 years
2  of experience. The hourly rate charged for Ms. Bjurstrom is $607.50. Ms. Michelle
3  A. Herrera is an attorney with Pillsbury's intellectual property practice with more than
4  13 years of experience. The hourly rate charged for Ms. Herrera is $472.50. Plaintiff
5  represents that the hourly rates sought for both Ms. Bjurstrom and Ms. Herrera have
6  already been reduced by 10% because Plaintiff receives a 10% professional discount.

7  Plaintiff's counsel's declaration does not meet its initial burden. "To inform and
8  assist the court in the exercise of its discretion, the burden is on the fee applicant to
9  produce satisfactory evidence – ***in addition to the attorney's own affidavits*** – that the
10 requested rates are in line with those prevailing in the community for similar services
11 by lawyers of reasonably comparable skill, experience and reputation." *Blum v.*
12 *Stenson*, 465 U.S. 886, 896, n.11 (1984) (emphasis added). Nevertheless, the Court
13 may consider Plaintiff's counsel's declaration together with awards in similar cases and
14 its own knowledge and familiarity with the Southern District of California legal market
15 in setting a reasonable hourly rate. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th
16 Cir. 2011).

17 Defendant cites *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No.
18 06cv1848, 2009 WL 160235, *4 (S.D. Cal. Jan. 20, 2009) as a comparable case. In
19 *Brighton*, the claims arose under the Copyright Act and Lanham Act, and the court
20 awarded $550 per hour in attorney's fees for attorney with 25 years of experience.
21 Defendant argues that Plaintiff's counsel should not be given an comparable award
22 because this case has not advanced to trial, as the *Brighton* case did. The Court is not
23 persuaded.

24 Defendant further argues that Plaintiff's counsel's rate should be reduced for
25 engaging in top heavy billing. Defendant argues counsel should have tasked a junior
26 associate or a paralegal to conduct rudimentary tasks, such as performing legal research
27 or contacting the Court regarding the discovery disputes at issue. The Court disagrees.
28 / / /

The Court is persuaded that there were significant cost advantages to having Ms. Herrera handle Plaintiff's sanctions motion. Ms. Herrera was personally involved in all of the meet and confer efforts leading up to the January 27, 2014 Order. The long history, breadth, and seriousness of the issues addressed in the motion are additional factors that support having an experienced attorney handle the motion. Further, when the parties place calls to chambers, there is an expectation that the call be placed by counsel with sufficient knowledge of the case. Finally, having analyzed the time entries in the context of the reams of argument and evidence at issue, the Court finds that Ms. Herrera's time entries demonstrate she exercised billing judgment.

The Court concludes that Plaintiff's requested rates are reasonable in light the Court's own knowledge and experience with the legal market in the Southern District of California, including awards in similar cases, and evidence of customary fees for complex litigation, the 10% discount applied, and counsel's experience, reputation, and skill.

### B. The Lodestar Calculation: Reasonable Hours

"By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

Plaintiff requests fees and costs in the total amount of $30,449.25 based on 63.3 hours of work. Plaintiff contends that the work related to the instant motion for sanctions included:

- Reviewing RFT's documents produced to determine completeness;
- Corresponding with RFT's counsel regarding RFT's failure to produce documents, and conferring with the Court's law clerk regarding the same;

/ / /

1     •    Preparing a letter brief to the Court regarding RFT's production
2          deficiencies;
3     •    Preparing for and participating in meet and confers with RFT's counsel
4          regarding RFT's production deficiencies;
5     •    Conducting legal research regarding issues relevant to the Sanctions
6          Motion;
7     •    Drafting the Sanctions Motion, the supporting pleadings and declaration,
8          and preparing the exhibits;
9     •    Reviewing and analyzing RFT's opposition to the Sanctions Motion, and
10         evidence submitted in support thereof;
11    •    Conducting legal research relevant to HME's reply brief in support of the
12         Sanctions Motion; and
13    •    Drafting the reply brief, supporting declaration and evidence in support
14         of the same.

15 (ECF No. 180 at 3-4. *See also* ECF Nos. 101-2 at 4-5, 128-1 at 4-5, 184-1 at 2.) The
16 June 25, 2014 declaration of Plaintiff's counsel states, "Where a time entry on any
17 particular day included work on matters other than the Sanctions Motion, those tasks
18 were not included in calculating the amount of fees requested herein." (*Id*. at 3.)
19       The Court concludes that during the period February 10, 2014 through April 21,
20 2014, Plaintiff incurred reasonable attorneys' fees for work performed by Ms. Herrera
21 and Ms. Bjurstrom resulting from Defendant's failure to comply with the January 27,
22 2014 Order. However, the Court finds that only approximately half of the discovery
23 deficiencies complained of constitute Rule 37 violations.
24       Defendant argues that Plaintiff's counsel's time should be reduced to reflect its
25 vagueness and the fact that counsel engaged in block billing. However, Plaintiff's
26 counsel sufficiently addressed Defendant's concern that Plaintiff is seeking to recover
27 both compensable and non-compensable time by providing descriptions for time spent
28 / / /

*only* in connection with the sanctions motion.[7] Further, given the number and sweeping nature of the discovery disputes raised by the sanctions motion, the Court rejects Defendant's suggestion that Plaintiff's records must be so specific so as to separate out time spent on each discovery dispute with Defendant. Plaintiff provides sufficient detail for the Court to evaluate the reasonableness of the time spent by counsel on the sanctions motion.

Nevertheless, the Court agrees that the time submitted should be reduced to reflect Plaintiff's limited success. While the records are sufficiently detailed to support an award of expenses, the time entries submitted inextricably intertwine the recoverable and nonrecoverable time spent on the discovery disputes at issue in Plaintiff's motion for sanctions. Having reviewed and considered the time records, the content of papers filed in support of Plaintiff's motion, the breadth of the discovery deficiencies raised and limited success of Plaintiff's motion, the Court concludes that a 50% reduction of the time spent fairly and fully compensates Plaintiff for fees incurred as a result of Defendant's Rule 37 violations.

Based on the foregoing discussion, and having reviewed the submissions regarding fees incurred as a result of Defendant's violations of the January 27, 2014 Order, Plaintiff is awarded the following reasonable expenses and fees: (1) $14,009.62 for Ms. Herrera's time spent (29.65 hours at $472.50 per hour); and (2) $1,215.00 for Ms Bjurstrom's time (2 hours at $607.50 per hour).[8] Thus, the total amount in expenses awarded under Rule 37 is $15,224.62.

The Court declines to issue sanctions beyond this award of expenses as the Court finds that the amount of the award is sufficient to deter future misconduct and compensate Plaintiff for its losses related to violations of the January 27, 2014 Order.

---

[7] Defendant cites February 25, 2014 as its example of Plaintiff attempting to collect non-compensable time. To refute this accusation, Plaintiff's counsel submitted a declaration that states, "I have reviewed my time entry in this case on February 25, 2014. On that date, I billed 8.2 hours of time for work related to this case. In my prior declaration filed on June 25, 2014 (Doc. No. 180), I allocated .30 hours of this time to work related to HME's Sanctions Motion." (ECF No. 184-1.) This lends further support to the Court's finding the Plaintiff's counsel is only seeking fees related to the sanctions motion.

[8] This represents a 50% reduction in the hours submitted to the Court.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for sanctions pursuant to Federal Rule of Civil Procedure Rule 37 (ECF No. 101) is **GRANTED IN PART**. As a Rule 37 sanction, Defendant shall pay Plaintiff **$15,224.62** by **August 4, 2014**, which constitutes Plaintiff's reasonable expenses caused by Defendant's violations of the January 27, 2014 Order. Further, Defendant is **ORDERED** to immediately cure the failures outlined in II.B. above, and in no event later than **August 4, 2014**. Defendant shall complete and provide Plaintiff with the sworn affidavits as ordered in II.B. above no event later than **August 4, 2014**. Plaintiff's request for a schedule of prospective fines is **DENIED** without prejudice to renewal should Defendant fail to comply with this Order by **August 4, 2014**. Finally, the parties shall finalize their twenty-two search term agreement on or before **July 17, 2014**, and absent leave of Court, Defendant shall complete its twenty-two search term document production on or before **August 4, 2014**.

**IT IS SO ORDERED.**

DATED: July 3, 2014

JILL L. BURKHARDT
United States Magistrate Judge