CALLIE A. BJURSTROM (STATE BAR NO. 137816)
BRIAN D. MARTIN (STATE BAR NO. 199255)
MICHELLE A. HERRERA (STATE BAR NO. 209842)
PILLSBURY WINTHROP SHAW PITTMAN LLP
501 West Broadway, Suite 1100
San Diego, CA 92101-3575
Telephone: (619) 234-5000
Facsimile: (619) 236-1995
Email:  callie.bjurstrom@pillsburylaw.com
        brian.martin@pillsburylaw.com
        michelle.herrera@pillsburylaw.com

Attorneys for Plaintiff HM Electronics, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HM ELECTRONICS, INC., a California corporation,<br><br>                              Plaintiff,<br><br>        vs.<br><br>R.F. TECHNOLOGIES, INC., an Illinois corporation; and Babak Noorian, an individual.<br><br>                              Defendants. | No. 12-CV-2884-BAS (MDD)<br><br>REDACTED JOINT MOTION REGARDING PLAINTIFF HM ELECTRONICS, INC.'S REQUEST FOR (1) ISSUE SANCTIONS AND EVIDENTIARY SANCTIONS AGAINST DEFENDANTS PURSUANT TO FED R. CIV. P. 37(b); (2) AN ADVERSE INFERENCE INSTRUCTION REGARDING DEFENDANTS' WITHHOLDING OF DOCUMENTS AND SPOLIATION OF EVIDENCE; AND (3) A FINDING OF CONTEMPT AGAINST DEFENDANTS; AND (4) AN AWARD OF EXPENSES<br><br>Date:    None Set<br>Time:    None Set<br>Judge:   Mitchell D. Dembin<br>Crtrm:   11th Floor Annex |

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   JUDGE BURKHARDT'S JULY 3, 2014 DISCOVERY ORDER AND
      DEFENDANTS' RESPONSE ...........................................................................1

      A.    Relevant Provisions of Judge Burkhardt's Discovery Order ...................2

      B.    RFT's Responses By Way of Sworn Affidavits.......................................3

            1.    Declaration from Defendants' Counsel Thomas O'Leary...................3

            2.    Declaration from RFT's IT Director, Stephen Combs ........................6

III.  PLAINTIFF'S STATEMENT IN SUPPORT OF ITS REQUEST FOR
      SANCTIONS AGAINST RFT AND BABAK NOORIAN ...............................9

      A.    Summary of Relevant Facts .....................................................................9

            1.    HME's Trade Libel Claim and Lanham Act False
                  Advertising Claims .........................................................................9

            2.    RFT's Responses to Discovery Related to HME's Trade
                  Libel Claim and Lanham Act False Advertising Claim ...................11

            3.    Early Deposition Testimony Regarding the Structural
                  Failures Document and Related Materials........................................12

            4.    RFT's Failure to Produce Responsive Documents ...........................14

            5.    RFT's Initial ESI Production ..........................................................16

            6.    RFT Wrongfully Withheld Over 100,000 Pages of ESI....................18

            7.    RFT Improperly Withheld Documents Relevant to HME's
                  Trade Libel and Lanham Act False Advertising Claims ...................19

            8.    RFT Selectively Produced Hard Copy Documents ...........................21

      B.    Reasons Why This Court Should Impose Sanctions Against RFT and
            Mr. Noorian ..........................................................................................24

            1.    The Court Should Impose Issue Sanctions and Evidentiary
                  Sanctions Against RFT and Mr. Noorian ...........................................24

            2.    The Falsity of the Structural Failures Document and the
                  Average Rate of Repair and Cost Information Should be
                  Taken as Established Facts. ..................................................................25

            3.    RFT and Mr. Noorian's Awareness of the Creation and
                  Distribution of the Structural Failures Document and
                  Average Repair Rate Information Should be Taken as
                  Established Facts..................................................................................26

12-23-14 Joint Motion re Sanctions as to RFT ESI.docx                    Case No  12-CV-2884 BAS (MDD)

4.    The Court Should Preclude RFT and Mr. Noorian from Asserting that HME Was Not Damaged by the Structural Failures document, the Average Repair Rate Information, or Derivative Materials ..................................................28

5.    The Court Should Partially Strike Defendants' First, Ninth and Fourteenth Affirmative Defenses ..................................................29

6.    The Court Should Establish a Rebuttable Presumption that RFT's False Statements Regarding the ION IQ Were a Substantial Factor in RFT's Sales of the Panasonic Attune ..............30

C.    Reasons Why This Court Should Issue a Report and Recommendation to the District Judge to Provide an Adverse Inference Instruction at Trial ..................................................31

D.    Reasons Why This Court Should Issue a Report and Recommendation to the District Judge to Find Defendants in Contempt of Court ..................................................33

E.    RFT's Recent Deposition Testimony Does Not Mitigate the Sanctions Requested by HME ..................................................34

F.    Reasons Why HME is Entitled to an Award of Expenses ..................................................38

IV.    DEFENDANTS' STATEMENT IN OPPOSITION TO PLAINTIFF'S REQUEST FOR SANCTIONS AGAINST RFT AND BABAK NOORIAN ..................................................39

A.    INTRODUCTION ..................................................39

B.    STATEMENT OF FACTS ..................................................40

1.    Defendants Did Not Intentionally Destroy Any Relevant Documents ..................................................40

2.    Defendants Did Not Intentionally Delay Producing Any Relevant Documents ..................................................42

C.    ARGUMENT ..................................................46

1.    Alleged Failure to Produce Documents Related to the IQ Structural Failures Document. ..................................................46

2.    Alleged Intentional Withholding of Documents Relevant to RFT's False Statements ..................................................48

3.    Alleged "Selective" Production of Emails Regarding the Distribution of the IQ Structural Failures Document ..................................................49

4.    Alleged "Destruction" of Information Regarding "Widespread Dissemination" of the IQ Structural Failures Report ..................................................50

5.  Alleged Withholding or Destruction of Evidence Undermining Affirmative Defenses .................................... 51

6.  There Is No Basis for a "Rebuttable Presumption" that RFT's False Statements Were a Substantial Factor in RFT's Sales of the Panasonic Attune .................................... 52

7.  An Adverse Inference Instruction is Unwarranted ............ 53

8.  There Is No Basis to Recommend a Finding of Contempt. ............... 54

9.  Mr. Noorian's Deposition Cleared Up All Remaining Issues ....................................................................................... 55

10.  HME is Not Entitled to an Award of Expenses. ................. 56

11.  The Court Should Not Impose Any Sanctions ................... 56

D.  CONCLUSION ........................................................................... 57

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### <u>Cases</u>

4

*Apple Inc. v. Samsung Elecs. Co., Ltd.,*

5
    881 F. Supp. 2d 1132 (N.D. Cal. 2012)..................................................32

6

*Apple, Inc. v. Samsung Elec. Co., Ltd.,*

7
    888 F. Supp. 2d 976 (N.D. Cal. 2012).......................................31, 33, 56

8

*Baliotis v. McNeil,*

9
    870 F.Supp. 1285 (M.D.Pa.1994)...........................................................56

10

*Chin v. Port Auth. of New York & New Jersey,*
    685 F.3d 135 (2d Cir.2012) ....................................................................57

11

12

*Donovan v. Mazzola,*
    716 F.2d 1226 (9th Cir. 1983) ................................................................34

13

14

*FTC v. Affordable Media,*
    179 F.3d 1228 (9th Cir. 1999) ................................................................33

15

16

*Glover,*
    6 F.3d at 1329 (9th Cir. 1993) ...............................................................32

17

*Gordon Partners v. Blumenthal (In re NTL, Inc. Sec. Litig.),*

18
    244 F.R.D. 179 (S.D.N.Y. 2007)............................................................31

19

*Hyde & Drath v. Baker,*
    24 F.3d 1162 (9th Cir. Cal. 1994) ..................................................38, 56

20

21

*In re Napster,*
    462 F.Supp.2d at 1066–67 ...............................................................56, 57

22

*Jackson Family Wines, Inc. v. Diageo N. Am., Inc.,*

23
    No. 11-5639 EMC (JSC), 2014 U.S. Dist. LEXIS 19420 (N.D. Cal.

24
    Feb. 14, 2014).........................................................................................32

25

*Leon,*

26
    464 F.3d 959 .............................................................................................33

27

*Micron Tech., Inc. v. Rambus Inc.,*
    645 F.3d 1311 (Fed. Cir. 2011) .............................................................31

28

*Nursing Home Pension Fund v. Oracle Corp.*,
    254 F.R.D. 559 (N.D.Cal.2008) ...................................................................56

*Residential Funding*,
    306 F.2d at 108 .........................................................................31, 32, 33

*Schmid v. Milwaukee Elec. Tool Corp.*,
    13 F.3d 76 (3d Cir.1994) ...........................................................................56

*Stone v. City and Cnty. of San Francisco*,
    968 F.2d 850 (9th Cir. 1992) ....................................................................34

*Toth v. Trans World Airlines, Inc.*,
    862 F.2d 1381 (9th Cir. 1988) ..................................................................38

*Unigard Security*,
    982 F.2d at 368 ..........................................................................................57

*Zubulake v. UBS Warburg LLC*,
    229 F.R.D. 422 (S.D.N.Y. 2004) .............................................................32

Statutes and Codes

Federal Rules of Civil Procedure
    Rule 30(b)(6) ....................................................................................passim
    Rule 37..........................................................................................................24
    Rule 37(b)(2)(A)(iv) ...................................................................................57
    Rule 37(b)(2)(C) .........................................................................................38

Lanham Act.........................................................................................................passim

Rules and Regulations

Local Rule 7.1(h) ...............................................................................................39

## I.   **INTRODUCTION**

Plaintiff HM Electronics, Inc. ("HME"), and Defendants R.F. Technologies, Inc. ("RFT") and Babak Noorian (collectively, "Defendants"), submit this joint motion regarding HME's request for a contempt finding and sanctions against Defendants for failing to comply with Judge Burkhardt's July 3, 2014 Discovery Order, and for otherwise impeding and abusing the discovery process.

HME became aware of some of the facts supporting this motion in September 2014, and other facts became evident after that date.  Counsel for the parties met and conferred telephonically in September 2014, and as a result of that discussion RFT served additional documents on September 26, 2014, October 9, 2014 and October 23, 2014.  Counsel for the parties then met and conferred again on December 1, 2014.

It is HME's position, after having had a chance to preliminarily review these additional productions, and after taking Mr. Noorian's deposition as RFT's Federal Rule of Civil Procedure 30(b)(6) designee on various issues related to RFT's document production, that RFT failed to comply with Judge Burkhardt's Order, and Defendants have otherwise engaged in discovery misconduct without justification.

## II.   **JUDGE BURKHARDT'S JULY 3, 2014 DISCOVERY ORDER AND DEFENDANTS' RESPONSE**

HME's request for a contempt finding and for sanctions against Defendants arises principally from a Discovery Order issued by Judge Burkhardt on July 3, 2014.  (ECF No. 185.) The relevant portions of Judge Burkhardt' Order, and RFT's sworn written responses to the Order, are set forth below.

**A.     Relevant Provisions of Judge Burkhardt's Discovery Order**

[T]he January 22, 2014 letter[1] addressed the following nine categories of documents:

1.     All e-mails and other communications regarding the "HM Electronics IQ Structural Failures" document published by RFT;

2.     Documents concerning the factual support for RFT's quality and durability claims;

3.     Documents concerning the creation, receipt, use, publication and distribution of the "HM Electronics IQ Structural Failures" document published by RFT;

4.     Documents concerning the tests and analyses depicted in the HME Electronics IQ Structural Failures report;

5.     Communications between RFT and any third party regarding HME (i.e. customers, suppliers, vendors, dealers, testing facilities, competitors);

6.     All communications with and invoices from LS Research;

7.     All product comparison documents, and e-mails concerning the same;

8.     Documents supporting RFT's representations regarding post-warranty repair rates and costs for HME products; and

9.     Communications with the dealers and distributors.

    As to each of these items, Defendant represented in the January 22, 2014 joint letter that it would undertake further searches for responsive documents. The January 27, 2014 Order required Defendant to complete the outstanding document production with respect to these categories of documents (as well as those discussed in II.B. *supra*) by February 10, 2014.

    ***

---

[1] The January 22, 2014 letter refers to the parties' joint letter to Magistrate Judge McCurine on that date, which led to Judge McCurine's Discovery Order dated January 27, 2014.

> [T]he parties are hereby ordered to finalize their twenty-two search term agreement on or before July 17, 2014, and absent leave of Court, Defendant shall complete its ESI searches using the twenty-two agreed upon search terms on or before August 4, 2014.  (Footnote omitted.)

(*See* ECF No. 185.)[2]

## B.   RFT's Responses By Way of Sworn Affidavits

In her July 3, 2014 Order, Judge Burkhardt directed RFT to provide a sworn affidavit regarding RFT's efforts to search for and produce various categories of documents, including electronically stored information.  RFT provided two affidavits in response, one from its counsel and one from its IT Director, Stephen Combs.  The relevant portions of each are set forth below.

### 1.   Declaration from Defendants' Counsel Thomas O'Leary

> RFT was ordered to produce all emails and other communications regarding the "HM Electronics IQ Structural Failures" document it published. (Dkt. No. 185, p.12:21-22). However, RFT has already produced to Plaintiffs counsel its emails and other communications regarding the "HM Electronics IQ Structural Failures" document. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following: RF000155-RF000262. Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

> RFT was ordered to produce all documents concerning the factual support for its quality and durability claims pertaining to its products.  (Dkt. 22 No. 185, p.12:23-24).  However, RFT has already produced to Plaintiff's counsel its documents concerning the factual support for its quality and durability claims pertaining to its products. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following: RF017538-RF018468; RF001034-RF01124; RF016770-RF017489; RF017538-RF018468; 27 RF011497-RF011517; RF011518-RF016021; RF016022-RF016251; RF016252-28 RF016603; RF017490-RF017519; RF018469-RF021288; and RF200081.  Accordingly,

---

[2] The initial ESI search terms and revised ESI search terms agreed to by the parties are set forth in the e-mails attached to the Herrera Declaration as Exhibit 1.

RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT was ordered to produce documents concerning the creation, receipt, use, publication and distribution of the "HM Electronics IQ Structural Failures" document.  (Dkt. No. 185, p.12:25-26).  However, RFT has already produced to Plaintiff's counsel its documents concerning the creation, receipt, use, publication and distribution of the "HM Electronics IQ Structural Failures" document. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following: RF00015511 RF000262.  Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT was ordered to produce documents concerning the testing and analyses depicted in the "HME Electronics IQ Structural Failures" report. (Dkt. No. 185, p.12:27-28).  However, RFT has already produced to Plaintiff's counsel its documents concerning the testing and analyses depicted in the "HME Electronics IQ Structural Failures" report. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following: RF017538-RF018468; RF001034-RF01124; RF016770-RF017489; 21 RF017538-RF018468; RF011497-RF011517; RF011518-RF016021; RF016022-22 RF016251; RF016252-RF016603; RF017490-RF017519; RF018469-RF021288; and RF200081. Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT was ordered to produce all communications between it and any third-party (*i.e.,* customers, suppliers, vendors, dealers, testing facilities, competitors) regarding HME.  (Dkt. No. 185, p.13:1-2).  However, RFT has already produced to Plaintiff's counsel documents reflecting the communications between it and third-parties regarding HME. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following:  RF000263-RF000729; RF000734-RF000995; RF001034-RF01124; RF016770-5 RF017489; and RF000730-RF000731.  Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT was ordered to produce all communications with, and invoices from LS Research.  (Dkt. No. 185, p.13:3).  However, RFT has already produced to Plaintiff's counsel its communications with, and its invoices from LS Research. Moreover, this was only an informal document request by Plaintiff's counsel, as this was not specifically requested as part of Plaintiffs First Set of Request for Production of Documents. Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT was ordered to produce all product comparison documents, and emails concerning all product comparisons as well.  (Dkt. No. 185, 18 p.13:4). However, RFT has already produced to Plaintiff's counsel its product comparison documents, and emails concerning product comparisons as well. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following: RF001034-RF01124; RF016770-22 RF017489; RF017538-RF018468; and RF002257-RF011496; RF011497-23 RF011517; and RF000155-RF000262.  Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT was ordered to produce documents supporting its representations regarding post-warranty repair rates and costs for HME products.  (Dkt. No. 185, p.13:5-6). However, RFT has already produced to Plaintiffs counsel documents supporting its representations regarding post-warranty repair rates and costs for HME products. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following:  RF001034-RF01124; RF016770-RF017489; RF011497-RF011517; RF017538-5 RF018468; RF011518-RF016021; RF016022-RF016251; RF016252-RF016603; RF017490-RF017519; RF018469-RF021288; RF200081; RF000155-RF000262; RF000263-RF000729; RF000734- RF000995; and RF200107. Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT must produce all communications with its dealers and distributors. (Dkt. No. 185, p.13:7).  However, RFT has already produced to Plaintiff's counsel its communications with its dealers and distributors. RFT contends that the Bates numbers for the documents responsive to this Request includes, but is not limited to the following: RF000263-RF000729; RF000734-RF000995; RF001034-RF01124; RF016770-RF017489; and RF000730-RF000731.  Accordingly, RFT respectfully requests that this Court deems this

portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

RFT must conduct a broad-based ESI search using twenty-two agreed upon search terms, and it must produce documents resulting from such ESI searches. (Dkt. No. 185, p.13:13-17). However, RFT has already produced the documents resulting from the foregoing ESI searches to Plaintiff's counsel. Moreover, this was only an informal document request by Plaintiff's counsel, as this was not specifically requested as part of Plaintiffs First Set of Request for Production of Documents. Accordingly, RFT respectfully requests that this Court deems this portion of the Discovery Order as moot due to its dutiful compliance by way of its document production.

(*See* ECF No. 192.)

## 2.    Declaration from RFT's IT Director, Stephen Combs

In addition to the documents identified at paragraph 13 above, I provided a wealth of electronic data to RFT's electronic discovery vendor. More particularly, I provided the vendor with 4 Exchange Information Stores and 17 PST files that totaled over 300GB to be searched using key terms. The files provided to the vendor are identified in Exhibit A.   The Exchange Information Stores included 146 individual email accounts that are described in the attached Exhibit B.  It is my understanding that these email accounts were searched using key terms provided by Plaintiff. I am informed and believe that the search terms utilized by the vendor included the following: "HME or HM Electronics," "PanasonicRepairs, Sales and Service," "3M-Repairs, Sales and Service," "IQ Structural," "Briem," "LS Research," "Product Comparison," "Service Summary," "'HS6000/6000 headset," "ION," "HS61 00/6100 headset," "Com2000," "Com6000," "Com61 00," "Com400," "RF6000," "Case," "Beyond economic repair/BER," "HS12," "OEM" and "HS9." I am further informed and believe that these search terms were later revised to include certain boolean search limiters.

\*\*\*

RFT was ordered to produce all emails and other communications regarding the "HM Electronics IQ Structural Failures" document it published. (Dkt. No. 185, p.l2:21-22). The data described at paragraph 14 above, contains the email and communications responsive to this directive. I am also informed and believe that RFT's counsel provided to Plaintiff's counsel responsive

communications in the form documents bearing Bates numbers that include, but are not limited to, the following: RF000155-RF000262.  RFT was ordered to produce all documents concerning the factual support for its quality and durability claims pertaining to its products. (Dkt. No. 185, p.l2:23-24). RFT provided factual support for its quality and durability claims to its counsel. I am informed and believe that, prior to July 3, 2014, RFT's counsel provided Plaintiff's counsel with information responsive to this directive in the form of documents bearing Bates numbers that include, but are not limited to, the following: RF017538-RF018468; RF001034-RF01124; RF016770-RF017489; RF017538-RF018468; RF011497-RF011517; RF011518-RF016021; RF016022- RF016251; RF016252-RF016603; RF017490-RF017519; RF018469-RF021288; and RF200081.

RFT was ordered to produce documents concerning the creation, receipt, use, publication and distribution of the "'HM Electronics IQ Structural Failures" document. (Dkt. No. 185, p.l2:25-26). RFT provided documents concerning the creation, receipt, use, publication and distribution of the "HM Electronics IQ Structural Failures" document to its counsel. I am informed and believe that, prior to July 3, 2014, RFT's counsel produced to Plaintiff's counsel documents concerning RFT's creation, receipt, use, publication and distribution of the "HM Electronics IQ Structural Failures" document in form of documents bearing Bates numbers that include, but are not limited to, the following: RF000155-RF000262.

RFT was ordered to produce documents concerning the testing and analyses depicted in the "HME Electronics IQ Structural Failures" report. (Dkt. No. 185, p.l2:27-28). RFT provided to its counsel documents concerning the testing and analyses depicted in the "HME Electronics IQ Structural Failures" report. I am informed and believe that, prior to July 3, 2014, RFT's counsel provided to Plaintiff's counsel information concerning the testing and analyses depicted in the "HME Electronics IQ Structural Failures" report in the form of documents bearing Bates numbers that include, but are not limited to, the following: RF017538-RF018468; RF001034-RF01124; RF016770-RF017489; RF017538-RF018468; RF011497-RF011517; RF011518-RF016021; RF016022- RF016251; RF016252-RF016603; RF017490-RF017519; RF018469-RF021288; and RF200081.

RFT was ordered to produce all communications between it and any third-party (*i.e.*, customers, suppliers, vendors, dealers, testing facilities, competitors) regarding HME. (Dkt. No. 185, p.l3:1-2). The data described at paragraph 14 above contains the communications between RFT and any third

party regarding HME. In addition, I am informed and believe that, prior to July 3, 2014, RFT's counsel provided to Plaintiff's counsel responsive communications in the form of documents bearing Bates numbers that include, but are not limited to, the following: RF000263-RF000729; RF000734-RF000995; RF001034-RF01124; RF016770-RF017489; and RF000730-RF000731.

RFT was ordered to produce all communications with, and invoices from, LS Research. (Dkt. No. 185, p.l3:3). The data described at paragraph 14 above contains all email communications with LS Research.  Moreover, I am informed and believe that this was only an informal document request by Plaintiff's counsel and was not specifically requested as part of Plaintiffs First Set of Request for Production of Documents.

RFT was ordered to produce all product comparison documents and emails concerning all product comparisons as well. (Dkt. No. 185, p.l3:4). The data described at paragraph 14 above contains all email concerning product comparisons. I am informed and believe that, prior to July 3, 2014, RFT's counsel provided to Plaintiffs counsel with responsive documents in the form of documents bearing Bates numbers that include, but are not limited to the following:  RF001034-RF01124; RF016770-RF017489; RF017538-RF018468; and RF002257-RF011496; RF011497-RF011517; and RF000155-RF000262.

RFT was ordered to produce documents supporting its representations regarding post-warranty repair rates and costs for HME products.  (Dkt. No. 185, p.l3:5-6). I provided summary spreadsheets to counsel for RFT that contained information responsive to this directive. I am informed and believe that, prior to July 3, 2014, RFT's counsel provided to Plaintiff's counsel documents supporting its representations regarding post-warranty repair rates and costs for HME products in the form of documents bearing Bates numbers that include, but are not limited to, the following: RF001034-RF01124; RF016770-RF017489; RF011497-RF011517; RF017538-RF018468; RF011518-RF016021; RF016022-RF016251; RF016252-RF016603; RF017490-RF017519; RF018469-RF021288;RF200081; RF000155-RF000262; RF000263-RF000729; RF000734-RF000995;and RF200107.

RFT must produce all communications with its dealers and distributors. (Dkt. No. 185, p.13:7). The data described at paragraph 14 above contains RFT's communications with its dealers. In addition, I am informed and believe that, prior to July 3, 2014, RFT's counsel provided to Plaintiff's

counsel additional communication with RFT's dealers and distributers bearing Bates numbers that include, but are not limited to, the following: RF000263-RF000729; RF000734- RF000995; RF001034-RF01124; RF016770-RF017489; and RF000730-RF000731.

RFT must conduct a broad-based ESI search using twenty-two agreed upon search terms, and it must produce documents resulting from such ESI searches. (Dkt. No. 185, p.l3: 13-17). As set forth at paragraph 14 above, RFT has already produced the documents resulting from the foregoing ESI searches to Plaintiff's counsel.

(*See* Exh. 2 to Herrera Decl.)

## III.   PLAINTIFF'S STATEMENT IN SUPPORT OF ITS REQUEST FOR SANCTIONS AGAINST RFT AND BABAK NOORIAN

### A.   Summary of Relevant Facts

#### 1.   HME's Trade Libel Claim and Lanham Act False Advertising Claims

HME's First Amended Complaint asserts claims for trade libel and false advertising under the Lanham Act.  (ECF No. 156 at pp. 14-16; 18-19.)  HME's trade libel claim is based on RFT's creation and distribution of a document entitled "HM Electronics IQ Structural Failures" (the "Structural Failures document"), that pertains to HME's ION IQ wireless all-in-one headset.  (Exh. 3 to Herrera Decl.)  HME became aware of RFT's distribution of this document in approximately September or October of 2012, when one of HME's customers who received it from RFT forwarded it to HME.  HME's false advertising claim under the Lanham Act is based on RFT's creation and distribution of this document, as well as various other acts of false unfair advertising.

RFT designed the Structural Failures document to make it look like an HME internal quality control document, but it is not.  It is a document RFT created that attacks the quality and durability of HME's ION IQ headset.  The document purports to identify seven structural failure points inherent in the ION IQ headset that were determined by laboratory testing.  They were not.  The alleged "failure points" are

based on the lay observations of two RFT employees after they disassembled one ION IQ headset.  (*See* Exh. 4 to Herrera Decl., Crause Depo.)  The ION IQ headset does not suffer the structural deficiencies manufactured by RFT.

RFT also made false statements of fact about the lifetime repair cost associated with HME's ION IQ headset.  (*See* Exh. 5 to Herrera Decl.)  In various documents RFT claimed that the headset needed to be repaired every six to eight months, in an effort to dissuade customers from purchasing the ION IQ, and to instead purchase a competing product RFT happened to sell, the Panasonic Attune headset.  (Exh. 6 to Herrera Decl.)  At the time RFT made these statements the ION IQ headset was still under HME's manufacturer's warranty, and any repairs would have been performed by HME free of charge.  Importantly, RFT could not (and still cannot today) repair the ION IQ headset, because it lacks the parts and technical wherewithal to do so.  Scott Crause of RFT confirmed that when RFT disseminated the alleged average repair information, RFT had not repaired a single ION IQ headset.  (Exh. 4 to Herrera Decl.)  RFT had no basis in fact to make statements about the repair rate for the ION IQ.

RFT's statements described above were pure speculation, and false.  RFT provided this false information not only to RFT's prospective customers, but also to Panasonic System Communications North American ("Panasonic"), one of HME's main competitors for drive-thru headset systems.  █████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

(Panasonic Depo. Trans., Exh. 7 to Herrera Decl. 75:9-22, 146:2-148:10, 105:18-22, 210:9-18, 234:22-236:6.)

### 2. RFT's Responses to Discovery Related to HME's Trade Libel Claim and Lanham Act False Advertising Claim

RFT and Mr. Noorian have consistently disclaimed knowledge of the Structural Failures document, the average repair rate information for the HME ION IQ, and RFT's distribution of the same.  When asked to identify all persons to whom RFT provided the Structural Failures document, RFT responded that the only person who knew that information was Mark Sullivan, RFT's former National Sales Director, who was no longer employed by RFT.  (Exh. 8 to Herrera Decl.)  HME challenged the sufficiency of this response, and after the parties met and conferred RFT amended its response to state:

> Mark Sullivan is the ***only*** person with knowledge to whom, if anyone, the "HM Electronics IQ Structural Failures" document was distributed.  (Exh. 9 to Herrera Decl.)

HME also asked RFT to identify persons at Panasonic who may have knowledge regarding the content and distribution of the Structural Failures document.  RFT initially provided no substantive response, only objections, and claimed that the request sought information "within the possession or control of third parties and not available to Defendant."  (Exh. 8 to Herrera Decl.)  HME was again forced to initiate meet and confer dialogue to compel a meaningful response.  In its supplemental response, RFT claimed that it was "unaware of any person at Panasonic who may have knowledge regarding the content and distribution of the 'HM Electronics IQ Structural Failures' document."  (Exh. 9 to Herrera Decl.)

HME also propounded multiple document requests concerning the Structural Failures document to RFT in August 2013.  (Exh. 10 to Herrera Decl.)  HME asked RFT to produce documents concerning the creation and distribution of the Structural Failures document, and communications regarding the document.  RFT first claimed that it did not know if it had responsive documents.  (Exh. 11 to Herrera Decl.)  After HME challenged that response, RFT agreed to produce all responsive documents in

1   its possession, custody or control.  (Exh. 12 to Herrera Decl.)  HME also asked RFT

2   to produce documents between RFT and Panasonic concerning the Structural

3   Failures document.  RFT initially claimed that such documents "were irrelevant."

4   (Exh. 11 to Herrera Decl.)  RFT then supplemented its response, again at HME's

5   behest, and asserted "RFT has produced documents responsive to this request."

6   (Exh. 12 to Herrera Decl.)

7        RFT began producing documents on November 25, 2013.  On January 9,

8   2014, RFT claimed that it had no further documents to produce.  (Exh. 13 to Herrera

9   Decl.)  By that date, RFT had produced just over 1,100 pages of documents.  RFT

10  produced two internal e-mail strings regarding the Structural Failures document, five

11  e-mails from Mark Sullivan forwarding the report to potential customers, and one

12  communication with Panasonic.  (*See* Herrera Decl.)

13
                    **3.    Early Deposition Testimony Regarding the Structural**
14                          **Failures Document and Related Materials**

15       HME took the deposition of Mark Sullivan on April 1, 2014.  Mr. Sullivan's

16  account of the creation and distribution of the Structural Failures document, and the

17  knowledge of others at RFT (including Mr. Noorian) regarding the same, squarely

18  contradicted RFT's sworn discovery responses.  Mr. Sullivan produced documents

19  that RFT had never produced in discovery even though they were responsive to

20  HME's document requests, and within RFT's possession, custody or control.

21       Mr. Sullivan produced 69 pages of documents, the majority of which

22  concerned the Structural Failures document and average ION IQ repair rate

23  information distributed by RFT.  Mr. Sullivan produced a May 2012 email chain that

24  described how Philip Tondelli, RFT's Vice-President of Sales, obtained a damaged

25  ION IQ and took pictures which he then e-mailed to Mr. Sullivan.  (Exh. 14 to

26  Herrera.)  Mr. Sullivan told Mr. Tondelli, Mr. Noorian and others at RFT:

27              This can be our informing/explanation to the customer on why the new
                HME - as they say in their advertising is "Half the weight, twice the
28              comfort", but they don't say it is half the durability.  It would certainly

appear that any customer buying the IQ will be in for very frequent and expensive repairs once the warranty is up. Over a 8 to 10 year life of a system the customer may well spend 3X what they paid for the entire system just to keep fixing the headsets.

Let us know your observations so we can continually get the word out. (Exh. 14 to Herrera Decl.)

Mr. Sullivan confirmed that this email chain formed the basis for the Structural Failures document.  (Exh. 15 to Herrera Decl., Sullivan Depo., 152:18-21; 186:22-187:9, 202:7-13.)  He testified that Scott Crause (RFT's Vice-President of Operations) and Scott Richardson (RFT's Production Manager) "and all kinds of other sources" at RFT provided input on the document.  (*Id.,* 134:11-14, 141:12-19.) Mr. Sullivan also produced an e-mail showing that he directed Michelle Greenwood to create a "mundane lab fashion look" report for the "structural failures."  Mr. Noorian and others at RFT were copied on the e-mail.  (Exh. 14 to Herrera Decl.) Mr. Crause of RFT testified that the Structural Failures document was not backed by any laboratory testing, independent or otherwise.  (Exh. 4 to Herrera Decl.)

Mr. Sullivan produced a handful of e-mails he sent to prospective customers with the Structural Failures document attached.  Mr. Sullivan said he authored more than 8,000 e-mails that resided on an RFT server that could be searched to identify further instances of distribution.  (Exh. 15 to Herrera Decl., 196:17-197:2.)  Mr. Sullivan testified that he believed Mr. Noorian had given his approval to distribute the Structural Failures document, and that he would not have sent it out without Mr. Noorian's approval.  (*Id.,* 211:23-212:8.)  Mr. Sullivan also produced an e-mail he sent to Mr. Noorian on December 6, 2012, two days after RFT was served with the Complaint and in response to Mr. Noorian's request for "ALL examples of your samples material that relates to HME before end of day tomorrow."  Mr. Sullivan sent Mr. Noorian "a complete zip [file] of materials that pertain to this," and a list of over 100 e-mails Mr. Sullivan sent since 2011 "pushing Attune" to which Mr. Sullivan attached the Structural Failures document and average repair rate information.  (Exh. 14 to Herrera Decl.)

1   HME took Mr. Noorian's deposition on June 11, 2014. ████████████
2   ████████████████████████████████████████████████████████
3   ████████████████████████████████████████████████
4   ████████████████████████ (Exh. 16 to Herrera Decl., Noorian Depo.,
5   311:6-12; 311:20-23, 314:7-10; 325:2-10.)

**4.    RFT's Failure to Produce Responsive Documents**

7   HME first raised RFT's failure to produce documents responsive to HME's
8   document requests early on in discovery.  HME's efforts to compel RFT to produce
9   documents are reflected in the Court record and chronicled in this Court's Order
10  dated December 15, 2014 (ECF No. 251), and will not be repeated in detail here.
11  Those efforts culminated in a January 27, 2014 order from Judge McCurine
12  compelling RFT to produce all documents identified in a January 22, 2014 joint
13  letter from the parties.  RFT did not comply.  The parties met and conferred, and
14  RFT's counsel offered no explanation for why RFT had not produced many
15  categories of documents, and stated that RFT had produced all responsive ESI,
16  including communications between RFT and third parties regarding the Structural
17  Failures document (Exh. 17 to Herrera Decl., 14:25-15:8; 21:20-22:4.)

18  HME was not persuaded, and filed a motion for sanctions against RFT on
19  March 20, 2014.  RFT made its initial ESI production in May 2014, over eight
20  months after HME served its first set of document requests and while HME's
21  sanctions motion was pending before Magistrate Judge Burkhardt.  On July 3, 2014,
22  Judge Burkhardt granted HME's motion in part, and awarded sanctions to HME.
23  (ECF No. 185, p. 20.)  Judge Burkhardt found that RFT failed to produce several
24  categories of documents ordered by Judge McCurine, and that RFT failed to perform
25  ESI searches using the search terms agreed to by the parties.  Judge Burkhardt,
26  unaware of RFT's ESI production in May 2014, directed RFT to perform the ESI
27  searches and produce the results by August 4, 2014.  (*Id.*, p. 14.)  Judge Burkhardt

28

1  also directed RFT to provide a sworn affidavit regarding its efforts to locate and

2  produce documents.

3  RFT provided an external drive containing ESI on May 18, 2014, containing

4  234,054 documents numbering over 722,000 pages.  On May 23rd, RFT wrote to

5  HME citing concern that the production contained corrupt metadata and requesting

6  return of the drive.  RFT's counsel also stated that "the corrupt data may have

7  compromised our initial privilege review."  (Exh. 18 to Herrera Decl.)  RFT sent a

8  replacement drive on May 28, 2014 containing 50,562 documents numbering

9  127,441 pages.  RFT then asked HME to provide written confirmation that RFT had

10  produced all documents required by Judge Burkhardt's order, stated that "RFT did

11  indeed already produce all of the documents identified by the Court in its Order,"

12  and claimed that Judge Burkhardt's discovery order was "moot and obsolete."  (Exh.

13  19 to Herrera Decl.)  HME could not and would not do what RFT asked.  (*See* Exh.

14  20 to Herrera Decl.)

15  RFT's counsel filed a declaration on August 4, 2014, and stated under penalty

16  of perjury that RFT "dutifully and diligently sought to produce the documents

17  identified in Judge Burkhardt's Order," that RFT had "fully complied with the

18  Court's Discovery Order," and that the declaration was intended to serve as

19  "confirmation indicating that RFT has indeed produced the list of documents

20  itemized by the Court, and that it has, in good-faith, dutifully complied with the

21  Discovery Order."  RFT's counsel went on to specifically aver that RFT "produced

22  to Plaintiff's counsel its emails and other communications regarding the 'HM

23  Electronics IQ Structural Failures' document," and asked Judge Burkhardt to deem

24  that portion of her order "moot due to [RFT's] dutiful compliance by way of its

25  document production."  RFT's counsel made the same representation regarding its

26  alleged production of all documents concerning the creation, receipt, use, publication

27  and distribution of the 'HM Electronics IQ Structural Failures' document," "product

28  comparison documents," documents supporting "RFT's representations regarding

post-warranty repair rates and costs for HME products," and documents resulting from RFT's "broad-based ESI search using twenty-two agreed upon search terms." (ECF No. 192.)

When HME pointed out that Judge Burkhardt's order required a declaration from RFT, not its counsel, RFT begrudgingly provided one from Stephen Combs, RFT's IT Director.  Mr. Combs made substantially the same statements and representations as RFT's counsel, under penalty of perjury, regarding RFT's production of documents and alleged compliance with Judge Burkhardt's order. (Exh. 2 to Herrera Decl.)

### 5.    RFT's Initial ESI Production

RFT's initial production of ESI revealed that RFT's discovery responses regarding the Structural Failures document were deceitful, and indicated that RFT previously withheld responsive documents.  Whereas RFT's prior document productions included only five instances of distribution of the Structural Failures document, its initial ESI production revealed several more instances.  Moreover, whereas RFT's prior document production included only one communication with Panasonic, its initial ESI production revealed hundreds of communications between the two.

1   ███████████████████████████████████████████████████  (Exh. 21 to

2   Herrera Decl.)

3       RFT's claim in its prior discovery responses, verified by Mr. Noorian, that

4   RFT was unaware of anyone at Panasonic who might have knowledge of the

5   Structural Failures document or its content was false.  Documents produced by

6   Panasonic revealed that RFT and Panasonic had several additional meetings where

7   HME was discussed, and that Mr. Noorian participated in at least four of them.

8   (Herrera Decl.)  Yet when HME served interrogatories asking RFT to identify all

9   meetings between RFT and Panasonic where HME was discussed, RFT served

10  objections only.  (Exh. 22 to Herrera Decl.)  HME was again forced to initiate meet

11  and confer efforts.  RFT then provided a supplemental response stating:

12      RFT does not possess any information within its possession, custody, or
    control that is responsive to Plaintiff's request identifying the persons
13  present, as well as the date and location of all meetings between Defendant
    and Panasonic, wherein Plaintiff was discussed, mentioned, or referred to
14  from January 1, 2012 to the present date.  However, the Defendant can
    identify that Mark Sullivan and Lillia Taschuk – who are no longer
15  employed by the Defendant – may possess information, if such may exist,
    responsive to this request because they would have been the individuals
16  involved in any such meetings, had they taken place.  (Exh. 23 to Herrera
    Decl.)
17

18

19      This response was knowingly false when made.  ███████████████

20  ████████████████████████████████████████████████████████

21  ██████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  █████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████

25  ███████████████████████████████████████████████

26  ███  (*See* Herrera Decl. Exh. 7, Panasonic Depo. 105:18-22, 210:9-18, 231:14-

27  233:24; 234:22-235:22.)

28

### 6.     RFT Wrongfully Withheld Over 100,000 Pages of ESI

What is most remarkable about RFT's initial ESI production, however, is the omission of numerous e-mails that should have been produced.  After RFT made its initial ESI production, HME began receiving documents from third parties pursuant to subpoenas that (1) were responsive to HME's document requests, and (2) should have been identified through RFT's application of the agreed upon ESI search terms. HME brought this to RFT's attention by letter dated September 12, 2014.  (Exh. 24 to Herrera Decl.)  HME identified over 100 examples of e-mails produced by third parties that should also have been produced by RFT.  Counsel for RFT stated that he was able to locate all of the documents identified by HME in RFT's ESI database that RFT provided to its ESI vendor.  RFT's counsel further stated that these documents were not produced because RFT's counsel instructed RFT's ESI vendor to apply the word "confidential," standing alone, as an exclusionary privilege search term, and all documents containing the word "confidential" in any part of the text were therefore excluded from RFT's ESI production.  Because the word "confidential" appears in a disclaimer at the bottom of e-mails generated by RFT, RFT's counsel further explained, the e-mails identified by HME were among those withheld.  RFT's counsel then stated that tens of thousands of documents identified by RFT's ESI vendor as privileged were withheld from production and placed into a privilege database for review by RFT's counsel, but that RFT's counsel never reviewed the database.  RFT's counsel agreed to produce the withheld documents. (Exh. 25 to Herrera Decl.)

On September 26, 2014, less than two months before discovery cut-off, RFT produced over 35,000 additional documents, consisting of over 100,000 pages, that were wrongfully withheld as privileged.  RFT made additional productions of ESI on October 9, 2013 (over 1,600 documents in excess of 12,500 pages), and on October 23, 2014 (over 7,600 documents in excess of 42,000 pages).  Despite withholding over 45,000 responsive documents totaling over 150,000 pages between May 28,

2014 and October 23, 2014, RFT failed to serve a privilege log.[3]  RFT's last three productions made within weeks of discovery cut-off account for more than fifty percent of its total ESI production.

**7.    RFT Improperly Withheld Documents Relevant to HME's Trade Libel and Lanham Act False Advertising Claims**

(Exh. 27 to Herrera Decl.)

(Exh. 28 to Herrera Decl.)

(Exh. 29 to Herrera Decl.)

---

[3] Before its ESI production, RFT served a privilege log identifying 21 documents withheld as privileged. RFT did not serve an updated privilege log until November 14, 2014, and most of the documents listed appear to be completely irrelevant to this lawsuit.  (Exh. 26 to Herrera Decl.)

1

2

3

4   (Exh. 30 to Herrera Decl.)

5

6

7

8

9

10

11

12   (Exh. 31 to Herrera Decl.)

13

14

15

16

17

18   *(Id.)*

19

20

21

22

23

24   (Exh.

25   32 to Herrera Decl.)

26

27

28   (Exh. 33 to Herrera Decl.)

1

2

3 ████████████████████ (*See, e.g.,* Exh. 34 to Herrera Decl.)  RFT's

4 interrogatory responses that attempted to place all blame for distribution of the

5 materials on Mr. Sullivan were false.

6      RFT's late production of ESI included few additional e-mails showing RFT's

7 distribution of the Structural Failures document and average repair rate information.

8 RFT has failed to produce the majority of the 100-plus e-mails authored by Mr.

9 Sullivan "pushing Attune" that he identified at his deposition, even though (1) they

10 are identified in such a manner that they should easily be located in RFT's ESI

11 database, (2) they clearly existed as of December 6, 2012, (3) Mr. Sullivan told Mr.

12 Noorian that the Structural Failures document and average repair rate information

13 were attached to the e-mails, and (4) ████████████████

14 ████████████████████████████████

15 ████████████████ (Exh. 35 to Herrera Decl.)  Defendants have

16 also failed to produce Mr. Sullivan's December 6, 2012 e-mail to Mr. Noorian in its

17 original form, and have failed to produce the zip file attached to that e-mail, despite

18 specific requests for these documents.  (Exh. 24 to Herrera Decl.) ████████

19

20

21

22

23      HME still does not know the full extent of RFT's distribution of the Structural

24 Failures document and average repair rate information, and likely never will as a

25 result of Mr. Noorian's instructions to destroy evidence.

26          **8.    RFT Selectively Produced Hard Copy Documents**

27

28

1    ████   In addition to wrongfully withholding responsive ESI as "privileged," RFT

2    and Mr. Noorian selectively produced hard copy documents early on in discovery

3    that appear to support their claim that Mr. Sullivan was acting without their

4    knowledge and in alleged contravention of Mr. Noorian's orders in distributing the

5    Structural Failures document.  At the time they produced these "helpful" documents,

6    Defendants were in possession of other documents that are not so helpful, and they

7    made the conscious decision to withhold those documents from production.

8        RFT made its first several productions of documents in response to HME's

9    first set of document requests in November and December of 2013 in hard copy

10   format, not electronically.  In its first production on November 25, 2013, and in

11   response to HME's detailed requests related to the Structural Failures document,

12   RFT produced only two internal communications regarding the document.  The first

13   is a June 6, 2012 e-mail string between Mr. Noorian and Mr. Sullivan where Mr.

14   Noorian states that he has "a problem from a legal stand point for distributing [the

15   Structural Failures document] to anyone[,]" and asks Mr. Sullivan to "[p]lease wait

16   on this till I have done my research."  Mr. Sullivan responds, "OK will keep it tight."

17   (Exh. 36 to Herrera Decl.)

18       The second is a June 8, 2012 e-mail from Mr. Noorian to Michelle Greenwood

19   where he states "This material [HME IQ Failures] is for internal use only."  (Exh. 37

20   to Herrera Decl.)  Mr. Noorian sent this e-mail in response to Ms. Greenwood's e-

21   mail on the same date circulating an updated version of the Structural Failures

22   document.  (*Id*.)  The form in which this e-mail was produced is noteworthy.  The

23   header indicates that Ms. Greenwood forwarded this e-mail to Helen Fansler, RFT's

24   Executive Administrator, on November 4, 2013 at 11:42 a.m., a few weeks prior to

25   the date it was produced in this litigation.  However, RFT's ESI production revealed

26   that Ms. Greenwood forwarded several other e-mails related to the Structural

27   Failures document to Ms. Fansler on November 4, 2013, but they were not included

28   in RFT's hard copy production.  These emails are set forth below:

| Date | Time | Description | Bates No. |
|------|------|-------------|-----------|
| 11/4/13 | 12:09 p.m. | █████████ | RF362844 |
| 11/4/13 | 12:09 p.m. & 1:41 p.m. | █████████ | RF362853 & RF239451 |
| 11/4/13 | 12:12 p.m. | █████████ | RF362821 |
| 11/4/13 | 1:42 p.m. & 2:00 p.m. | █████████ | RF493054 & RF492138 |

1   (*See* Exh. 38 to Herrera Decl.)

2

3       Ms. Greenwood forwarded a flurry of internal e-mails regarding the Structural

4   Failures document to Ms. Fansler on November 4, 2013.  Defendants made the

5   conscious decision to produce only one of those e-mails, one that arguably supports

6   their position that Mr. Noorian told Mr. Sullivan to not distribute the Structural

7   Failures document, and to withhold the others.  While this type of selective

8   production of documents is bad enough in and of itself, Defendants made it much

9   worse when they represented a few weeks later that they had no further documents to

10  produce.  (Exh. 13 to Herrera Decl.)  There is no plausible explanation for this chain

11  of events.  Either Defendants did not provide all responsive documents they had in

12  their possession in November 2013 to their attorneys, or they did and their attorneys

13  chose not to produce the documents.  It doesn't really matter, however, because

14  either way the withholding of these documents is inexcusable.

15      This was not an oversight or simple misstep by the Defendants.  It was a

16  deliberate and calculated effort to throw HME off course in its efforts to obtain

17  information relevant to its trade libel and false advertising claims.

18

19  **B.**   **Reasons Why This Court Should Impose Sanctions Against RFT and Mr. Noorian**

20      **1.**   **The Court Should Impose Issue Sanctions and Evidentiary Sanctions Against RFT and Mr. Noorian**

21

22      RFT's failure to produce documents related to the libelous Structural Failures

23  document and average rate of repair and cost information for the ION IQ, in direct

24  contravention of both Judge McCurine's discovery order and Judge Burkhardt's

25  discovery order, warrants issue sanctions and evidentiary sanctions against both RFT

26  and Mr. Noorian.  Federal Rule of Civil Procedure 37 vest courts with authority to

27  "issue further just orders" against a party who fails to comply with an order related to

28  discovery, and may: (i) direct that the matters embraced in the order or other

designated facts be taken as established for purposes of the action; (ii) prohibit the disobedient party from supporting designated defenses, or introducing designated matters in evidence; and (iii) strike pleadings in whole or in part. All three sanctions are appropriate here.

### 2. The Falsity of the Structural Failures Document and the Average Rate of Repair and Cost Information Should be Taken as Established Facts.

RFT designed the Structural Failures document to appear as if it were a quality control document generated by HME. In a May 2012 e-mail on which Mr. Noorian was copied, Mr. Sullivan directed Ms. Greenwood to "have the attached failure report done in a mundane lab fashion with the corresponding photos next to each failure point." ████████████████████████ ████████████████████████████ (Exh. 39 to Herrera Decl.) This particular communication was among the thousands that RFT wrongfully withheld from its ESI production until called to task by HME.

The Structural Failures document bears no indicia that it was prepared by RFT. ████████████████████████████ ████████████████████████████ ████████████████████ (Exh. 40 to Herrera Decl.) The deposition testimony of Mr. Crause revealed that the alleged "failure points" of the ION IQ were based not on any sort of testing, but on two (2) RFT employees' examination of one disassembled HME ION IQ headset. ████████████ ████████████████████████████████ ████████████████████ (*Id.*) In truth, RFT had never repaired an ION IQ headset when these statements were made, and could not have obtained repair rate information for the ION IQ headset from any other source.

RFT's distribution of unsupported, speculative and false statements regarding HME's ION IQ headset, and intentional withholding of documents relevant to RFT's false statements, warrant an issue determination sanction. HME should not be forced

at trial to prove facts RFT and Mr. Noorian knew to be true, but withheld.  The Court should determine the falsity of both (1) the Structural Failures document (Exh. 3 to Herrera Decl.) and (2) the various documents concerning the alleged average rate of repair and cost of the HME ION IQ headset (*see, e.g.* Exhs. 5 & 6 to Herrera Decl., as established facts.

### 3. RFT and Mr. Noorian's Awareness of the Creation and Distribution of the Structural Failures Document and Average Repair Rate Information Should be Taken as Established Facts

Throughout this lawsuit, RFT and Mr. Noorian have feigned ignorance regarding the false Structural Failures document and the manufactured average repair rate information.  RFT claimed in sworn discovery responses that Mr. Sullivan was the "only person" with knowledge to whom, if anyone, the Structural Failures document was distributed.  RFT further claimed that it was "unaware of any person at Panasonic who may have knowledge regarding the content and distribution 'HM Electronics IQ Structural Failures' document."  (Exh. 9 to Herrera Decl.)  RFT also disclaimed knowledge of any meetings between RFT and Panasonic where HME was mentioned or discussed.

RFT selectively produced e-mails in an effort to avoid culpability for its distribution of these libelous materials.  For example, RFT's very first document production included two e-mails that appear to support Mr. Noorian's claim that Mr. Sullivan did not have his authorization to distribute the Structural Failures document.  These documents were hand selected for hard copy production by RFT, Mr. Noorian and/or their counsel.  ███████████████████████

███████████████████████

███████████████████████ (Exh. 39 to Herrera Decl.)

███████████████████████

███████████████████████

███████████████ Defendants' election to produce Mr.

1  Noorian's response to Ms. Greenwood's e-mail, but not Mr. Tondelli's, is

2  inexplicable.

3       RFT and Mr. Noorian's claim that they were unaware that Mr. Sullivan and

4  others were distributing the Structural Failures document was also a lie. ██████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████  (Exh. 21 to Herrera Decl.)

7  Mr. Noorian knew at that point that the report was being disseminated outside of

8  RFT, despite any contrary instructions he may have given a month prior. ██████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ██████████████████████████████████████  (*See* Exh. 29 to

17 Herrera Decl.)  Mr. Noorian became aware of the potential extent of Mr. Sullivan's

18 distribution of the Structural Failures document on December 6, 2012, two days after

19 this lawsuit was filed, when Mr. Sullivan sent Mr. Noorian numerous documents

20 concerning the report including a list of over 100 e-mails Mr. Sullivan sent out with

21 the report attached.  RFT has still not accounted for all of those e-mails.

22       In light of the above, the Court should determine RFT and Mr. Noorian's

23 knowledge of both the creation and distribution of the Structural Failures document

24 and average repair rate information as established facts.

25

26

27

28

1

2       **4.    The Court Should Preclude RFT and Mr. Noorian from Asserting that HME Was Not Damaged by the Structural Failures document, the Average Repair Rate Information, or Derivative Materials**

3

4        RFT and Mr. Noorian have made it clear they intend to argue at trial that HME

5   was not damaged by either RFT's ▮▮▮▮▮▮ distribution of the Structural

6   Failures document, the average repair rate information, or derivative materials

7   created by Panasonic.  Specifically, RFT and Mr. Noorian have indicated they will

8   argue that HME is unable to establish that it lost any sales or potential sales as a

9   result of the distribution of these materials.

10        The widespread dissemination of false information regarding HME's ION IQ

11   cannot be overemphasized here.  Mr. Sullivan testified to sending over 100 e-mails

12   including the Structural Failures document and average repair rate information. ▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮      RFT and Mr. Noorian's spoliation of evidence and otherwise gross

16   dereliction of their disclosure obligations have made it exceedingly difficult for

17   HME to identify sales it may have lost as a result of the false and defamatory

18   materials RFT distributed, because Defendants have prevented HME from

19   identifying all recipients.  As a result of Defendants' discovery abuses, HME does

20   not know the true scope of RFT's distribution of these materials, and likely never

21   will.

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (*See* Herrera

26   Decl. Exh. 7, Panasonic Depo. 73:4-25, 75:9-22.) ▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



(Exh. 21 to Herrera Decl.)

(Exh. 7 to Herrera Decl., 192:17-25, 193:22-194:2, 210:9-14.)

(*Id.*, pp. 79:3-81:23, 111:24-112:13, 122:4-16.)

. (*Id.* pp. 180:25-182:21, 230:4-235:25.)

(*Id.*, pp. 112:21-113:16.)

RFT and Mr. Noorian should not be allowed to benefit from their abusive discovery tactics and their destruction of evidence relevant to HME's claim for damages on its trade libel and Lanham Act false advertising claims. The Court should preclude RFT and Mr. Noorian from asserting that HME was not damaged by RFT or Panasonic's distribution of the Structural Failures document, the average repair rate information, or derivative materials created by Panasonic.

### 5. The Court Should Partially Strike Defendants' First, Ninth and Fourteenth Affirmative Defenses

RFT and Mr. Noorian's First Affirmative Defense asserts that all of HME's claims fail to state a claim; their Ninth Affirmative Defense asserts that their actions do not constitute unfair competition; and their Fourteenth Affirmative Defense asserts that they acted with privilege or justification, and for legitimate business reasons. (ECF No. 176.)

All three affirmative defenses should be stricken as they relate to HME's Fifth Cause of Action for Trade Libel and Second Cause of Action for Unfair Competition under the Lanham Act (as it relates to the Structural Failures document and the average repair rate information).  Defendants should not be permitted to simultaneously assert affirmative defenses and deny HME evidence that undermines these defenses.

### 6.   The Court Should Establish a Rebuttable Presumption that RFT's False Statements Regarding the ION IQ Were a Substantial Factor in RFT's Sales of the Panasonic Attune

The Court should establish a rebuttable presumption that RFT's distribution of the Structural Failures document and average repair rate information, ██████████████ ████████████████████████████ were a substantial factor in RFT's sales of Panasonic Attune systems during the period May 1, 2012 to the present.

RFT has produced documents showing that it earned ████████████████ in revenue through its sale of Panasonic Attune systems during the period May 1, 2012 to May 1, 2014.  Because RFT has not produced sufficient and accurate information regarding the scope of its distribution of the Structural Failures document and average repair rate information, ██████████████████████████ ██████████████████ it is nearly impossible for HME to connect the dots between RFT's false statements regarding the ION IQ and the harm HME sustained and as a result.

Again, Defendants should not be permitted to assert HME has not been damaged by the Structural Failures document or average repair rate information when RFT destroyed evidence, failed to preserve evidence, or otherwise withheld, failed or refused to produce documents that would refute that claim.  Allowing Defendants to do so would unfairly and unjustly prejudice HME.

C. **Reasons Why This Court Should Issue a Report and Recommendation to the District Judge to Provide an Adverse Inference Instruction at Trial**

When a party destroys evidence or refuses to timely produce it, the Court has discretion to grant an adverse inference instruction to the jury. *See Residential Funding*, 306 F.2d at 107. A party seeking an adverse inference instruction must show:

> (i) the party having control over the evidence had an obligation to preserve or timely produce it; (ii) the party that destroyed or failed to timely produce evidence had a "culpable state of mind"; and (iii) the missing or tardily produced evidence is "relevant" to the party's claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense."

*Gordon Partners v. Blumenthal* (*In re NTL, Inc. Sec. Litig.*), 244 F.R.D. 179, 192 (S.D.N.Y. 2007) (citations omitted); *see also Apple, Inc. v. Samsung Elec. Co., Ltd.*, 888 F. Supp. 2d 976, 989-90 (N.D. Cal. 2012). All of these conditions are satisfied here.

First, Defendants' duty to preserve ESI arose when litigation with HME became plausible, and no later than December 4, 2012, the date the Complaint was filed. "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Apple*, 888 F. Supp. 2d at 991 (internal quote omitted). "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). Defendants had a duty to preserve all ESI relevant to HME's claims as early as May 2011, when HME sent a letter to RFT asserting claims related to HME's trademarks. (Exh. 41 to Herrera Decl.) Even if RFT contends it did not actually expect litigation at this point, the duty to preserve unquestionably solidified when HME filed its Complaint on December 4, 2012.

Second, Defendants clearly had a culpable state of mind, because they manipulated evidence by hand-selecting and producing relevant documents they thought would be helpful to their defenses, and withholding or destroying relevant documents they thought would be harmful.  Defendants also intentionally or recklessly disregarded their duty to timely produce responsive ESI.  A party's actions satisfy the culpability requirement if it intentionally or negligently destroys evidence or fails to produce it.  *Residential Funding*, 306 F.2d at 108.  "Bad faith" is not required; a party need only show that the other had "simple notice of 'potential relevance to the litigation.'"  *Glover*, 6 F.3d at 1329 (9th Cir. 1993).  Moreover, a party's failure to issue a litigation hold notice after the duty to preserve attaches is a strong indicator that the destruction of relevant documents was willful.  *See Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, No. 11-5639 EMC (JSC), 2014 U.S. Dist. LEXIS 19420, at *15-16 (N.D. Cal. Feb. 14, 2014).  "It generally is recognized that when a company or organization has a document retention policy, it 'is obligated to suspend' that policy and 'implement a litigation hold to ensure the preservation of relevant documents' after the preservation duty has been triggered."  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012).  As set forth in Section III.E., *infra*, RFT did not issue a litigation hold notice.

Additionally, RFT and its counsel had a duty to properly communicate to ensure all sources of documents were discovered.  *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("*Zubulake II*").  RFT and its counsel failed miserably in this regard, as evidenced by RFT's shifting positions on whether it had responsive documents, where they were located and whether RFT had performed electronic searches.  After Judge Burkhardt sanctioned RFT for failing to comply with Judge McCurine's Order, RFT submitted a declaration from its attorney and from its IT director stating that RFT had produced all responsive ESI.  That was false.  RFT's explanation for withholding responsive documents strains credulity and strongly suggests its counsel failed to conduct a privilege review.

Third, Defendants' likely destruction of documents referencing the Structural Failures document, and its delay in producing ESI, support an inference that the documents were relevant to the claims against Defendants, and unfavorable to Defendants.  Relevance may be inferred from a party's bad faith or gross negligence in failing to produce documents, or even its "purposeful sluggishness" in responding to discovery.  *Residential Funding*, 306 F.2d at 110.

All elements necessary for an adverse inference instruction are present, and this is an appropriate sanction to mitigate the prejudice Defendants' actions have caused to HME.  Prejudice exists where the offending party's actions have impaired the other's "ability to go to trial or threatened to interfere with the rightful decision of the case." *Apple*, 888 F. Supp. 2d at 993 (quoting *Leon*, 464 F.3d 959). Defendants' actions have interfered with the rightful decision in this case and have therefore prejudiced HME, and a sanction lesser than an adverse inference instruction would be insufficient to mitigate the harm Defendants' deliberate actions have caused HME.

The Court should provide an adverse inference instruction that (1) relevant documents Defendants failed to timely produce, or to produce at all, are harmful to Defendants, and (2) Defendants were aware of the falsity of the Structural Failures document and the average repair rate information, and encouraged distribution of the same.

**D.    Reasons Why This Court Should Issue a Report and Recommendation to the District Judge to Find Defendants in Contempt of Court**

"The standard for finding a party in civil contempt is well settled:  The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999).  Once the moving party meets this standard, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not

possible.  *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983).  The contemnor's subjective intent and willfulness is irrelevant.  *Id*.

Here, Defendants failed to comply with Judge Burkhardt's July 3, 2014 Order that directed RFT to produce numerous categories of documents identified in proceedings before Judge McCurine, and to produce all documents identified through RFT's application of the agreed upon search terms to its ESI.  Defendants did not take every reasonable step to comply with the Order, because they did not review and consequently withheld responsive documents that they erroneously segregated as privileged.  The two sworn declarations Defendants provided attesting that all responsive documents had been produced were false.  Defendants have still not produced all responsive documents, ███████████████████████████████

███████████████████

To assess whether an alleged contemnor has taken "every reasonable step" to comply with the terms of a court order, the district court can consider (1) a history of noncompliance, and (2) a failure to comply despite the pendency of a contempt motion.  *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 856–57 (9th Cir. 1992).  RFT has already been found in contempt for failing to comply with a Court order on two prior occasions.  A further contempt citation is warranted by the circumstances presented here.

**E.   RFT's Recent Deposition Testimony Does Not Mitigate the Sanctions Requested by HME**

The recent deposition testimony provided by Mr. Noorian, as RFT's corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6), does not justify or explain the numerous instances of discovery misconduct cited above.  In fact, Mr. Noorian's deposition testimony raised more questions than it answered.  ████

███████████████████████████████████████████

███████████████████████████████████████████

1
2
3
4 (Exh.
5 42 to Herrera Decl., RFT Depo., p. 9:20-25.)
6
7 (*Id.,* p. 13:11-14.)
8
9 (*Id.,* pp. 79:5-25, 87:10-88:6.)
10
11
12 (*Id.,* pp. 12:1-4, 18:12-19:6, 44:4-8.)
13
14
15 (RFT Depo., p. 22:13-21.)
16
17 (*Id.,*
18 pp. 14:21-16:3.)
19
20
21
22
23 (*Id.*, p. 18:1-10.)  The Court docket
24 reflects that five different law firms have represented the Defendants in this case.
25
26
27
28

1 ███████████████████████████████████████████████████

2 ███████████████████████████████████████████████ (*Id.*,

3 p. 88:9-24.)

4 ██████████████████████████████████████████████████

5 █████████████████████████████████████████████████

6 █████████████████████████████████████████████████

7 ████████████████████████████████████████ (RFT Depo., pp.

8 53:8-10, 60:1-17.) ████████████████████████████████

9 ██████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████ (RFT Depo., pp. 53:8-54:7, 56:15-57:5, 60:1-22, 66:19-67:1.) ████

12 ████████████████████████████████████████████████

13 ███████████████████████ (*Id.*, p. 61:11.)

14 ██████████████████████████████████████████████████

15 ██████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 (RFT Depo., pp., 45:13-17, 47:21-48:4.) ██████████████████████

18 ██████████████████████████████████████████████████

19 ██████████████████████████████████████████ (*Id.* 77:24-

20 78:20.) ███████████████████████████████████████████

21 ███████████████████████████████████████████████

22 ████████████████████████████████████ (*Id.*, pp. 33:13-35:6.) ████

23 ██████████████████████████████████████████████████

24 ██████████████████████████████████████████████████

25 ███████████████████████████████████████████████

26 ████████ (*Id.*, pp. 84:12-86:24.)  Assuming for the sake of argument that is true,

27 it does not exculpate Defendants' failure to timely produce the document because

28 their attorneys did not review documents withheld on the basis of privilege.

On this latter issue, Mr. Noorian shed no light on the circumstances surrounding RFT's failure to produced thousands of pages of ESI. ███████████

███████████████████████████████████

███████████████████████████████████

(RFT Depo., pp. 73:23-75:7.) █████████████████████████████

████████████████████████████████████

██████████████████████████ (*Id.,* p. 67:7-25.)

Lastly, Mr. Noorian offered up a host of self-serving testimony regarding the Structural Failures document that does not stand up to scrutiny. ████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████ (*Id.,* p. 24:10-14.) ██████████████████████

████████████████████████████████████

████████████████████████████████████

██████████ (Exh. 39 to Herrera Decl.) ████████████████

████████████████████████████████████ (RFT

Depo., p. 26:18-20.) ██████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████ (Exh. 21 to Herrera

Decl.) ██████████████████████████████

████████████████████████████████████

(*Id.*) ██████████████████████████████

████████████████████████████████



1   (Exh. 30 to Herrera Decl.)

6   (Exh. 43 to Herrera Decl.)

9   (Exh. 44 to Herrera Decl.)

10      The numerous inconsistencies in Mr. Noorian's recent deposition cast a

11  shadow of doubt on all of Mr. Noorian's testimony, and support the imposition of

12  severe sanctions against Defendants for discovery misconduct, including the

13  intentional destruction of evidence.

14      **F.**     **Reasons Why HME is Entitled to an Award of Expenses**

15      Federal Rule of Civil Procedure 37(b)(2)(C) "provides for the award of

16  reasonable expenses and attorney's fees 'caused by the failure' to obey a court order

17  to provide or permit discovery." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381

18  (9th Cir. 1988).  An award of expenses under Rule 37(b)(2)(C) is mandatory unless

19  the party to be sanction can establish that its failure to comply was substantially

20  justified or other circumstances make an award unjust. *Hyde & Drath v. Baker*, 24

21  F.3d 1162, 1171 (9th Cir. Cal. 1994).

22      HME has incurred attorneys' fees and costs in the amount set forth in the

23  Declaration of Michelle A. Herrera in connection with its efforts to compel

24  Defendants to comply with Judge Burkhardt's Order, and the preparation of this

25  motion.  Defendants should be ordered to pay those expenses.  HME will update any

26

27  4

28                                                         (RFT Depo., p. 23.)

additional attorneys' fees and costs it incurs in pursuing this motion as those expenses accrue.

IV.     **DEFENDANTS' STATEMENT IN OPPOSITION TO PLAINTIFF'S REQUEST FOR SANCTIONS AGAINST RFT AND BABAK NOORIAN**

A.      **INTRODUCTION**

The propriety of each and every one of the above requested sanctions requires the finding of two foundational facts:  (1) that RFT intentionally destroyed evidence relevant to HME's Trade Libel and Lanham Act claims and (2) that RFT intentionally delayed providing other relevant information, both to HME's prejudice.[5]  HME requests that the Court find those facts based on only conjecture and rhetoric.  In fact, HME's subject allegations are false and were proven false when HME deposed Mr. Noorian during the meet and confer in response to HME's service of its portion of this Joint Motion.  RFT did not intentionally destroy evidence relevant to HME's Trade Libel and Lanham Act claims or intentionally delay providing other relevant information.  RFT's production of over 1 million pages of ESI early in discovery decries HME's claims of spoliation and intentional delay.  In the absence of evidence of intentional destruction or evidence of intentional delay, all of the relief requested by the Joint Motion should be denied.

_____

[5]  HME's portion of this Joint Motion contravenes Local Rule 7.1(h) limiting moving papers to 25 pages and Judge Dembin's Civil Standing Order requiring a "statement by the propounding party as to why a further response should be compelled," and points and authorities 'not to exceed five pages."  HME sets forth above nearly 7 pages of introductory facts *most of which are single spaced*, 15 *more* pages of doubled spaced facts, followed by 14 *more* pages of argument for a total of over 36 pages.  In keeping with recent filings by HME, most of the "facts" discussed in the Joint Motion are designed to poison the well and argue the underlying merits or to point to unsubstantiated claims of perceived improprieties by RFT in its ESI production.  In fact, when HME's actual requested sanctions in the Joint Motion are dissected, it is clear that only the two "facts" discussed herein are relevant to a determination of this motion.

1

**B.     STATEMENT OF FACTS**

2

    **1.     Defendants Did Not Intentionally Destroy Any Relevant Documents**

3

4

      HME's entire claim that RFT intentionally destroyed relevant information is

5

an e-mail "appearing for the first time in RFT's late produced ESI."  *See* above, page

6

20.  HME alleges the following:

7



    (Exh. 31 to Herrera Decl.)

8

9

10

11

12

13

14

15

16

17

18

    *(Id.)*

*Id* (emphasis in original).

19

20

      HME relies on the subject e-mail as evidence that RFT destroyed evidence

21

relevant to its Trade Libel and Lanham Act claims and that it was intentionally

22

holding back such information in discovery.  Neither is true.  By agreement of the

23

parties, HME deposed Mr. Noorian on this very point, among others, on December

24

18, 2014, and

25

26

    Deposition of Babak Bob Noorian,

27

December 18, 2014, ("Noorian Depo.") Tr.:  79:5-14 (all cites to the Noorian Depo

28

in defendants' portion of this joint motion are attached as Exhibit A to the

Declaration of Brian Vanderhoof filed concurrently herewith ("Vanderhoof Decl.").
The materials that were deleted were duplicates, HME has all of the subject
information and there has been no prejudice.  HME also points to missing e-mails
alluded to by Mark Sullivan in his deposition to support its hypothesis that
defendants must have destroyed documents:

> "RFT's late production of ESI included few additional e-mails showing RFT's
> distribution of the Structural Failures document and average repair rate
> information.  RFT has failed to produce the majority of the 100-plus e-mails
> authored by Mr. Sullivan "pushing Attune" that he identified at his deposition,
> even though (1) they are identified in such a manner that they should easily be
> located in RFT's ESI database, (2) they clearly existed as of December 6,
> 2012, (3) Mr. Sullivan told Mr. Noorian that the Structural Failures document
> and average repair rate information were attached to the e-mails, and (4) ███
> ████████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████████
> ██████████   (Exh. 35 to Herrera Decl.)  Defendants have also failed to produce
> Mr. Sullivan's December 6, 2012 e-mail to Mr. Noorian in its original form,
> and have failed to produce the zip file attached to that e-mail, despite specific
> requests for these documents.  (Exh. 24 to Herrera Decl.)

See above, page 21.

> Based upon the foregoing, HME states:
>
> ████████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████████████
> ██████████████████████████████████████████████████
> ██████████████████████████████████████████████████
> ████████████████████████████

In fact, as discussed below, RFT provided all of the subject e-mails and
materials referenced by Mark Sullivan to its ESI vendors early in discovery and the

failure to produce them at that time was the fault of the vendor and not a reflection of any intent by defendants to destroy or withhold relevant information. *See* Declaration of Todd Stephan filed concurrently herewith ("Stephan Decl."), ¶¶ 4-9; *see also* Declaration of Stephen M. Combs signed September 3, 2014 (Exh. 2 to Herrera Decl.), and Declaration of Stephen M. Combs signed January 2, 2015, and filed concurrently herewith.

### 2.    Defendants Did Not Intentionally Delay Producing Any Relevant Documents

Defendants have been diligent in timely producing all information responsive to HME's discovery requests in this action.  RFT's first production of documents was made in early November of 2013 with subsequent productions occurring in mid-November, on four separate occasions in December, six occasions in January of 2014, four times in February, three more productions in March and another in April. Vanderhoof Decl., ¶ 4.  RFT made yet another production of documents on or around May 5, 2014.  *Id*.  RFT also offered to make available for inspection hundreds of thousands of pages of documents at its storage facility in Southern Illinois.  *Id*.  The Bates range for the documents produced between November, 2013 and April, 2014 is RF000001 – RF200120.  *Id*.

LeClairRyan took the lead in discovery and in making each of the above-mentioned document productions.  *Id*., ¶ 5.  However, in mid to late April, RFT engaged Greenberg Traurig ("GT") to assist in this action and to assume the lead in Discovery.  *Id.*  By the time GT was engaged, RFT had already produced 20 volumes of discovery and had engaged a vendor to collect a significant amount of electronically stored information ("ESI") from its servers and email accounts.  *Id.* GT made two small productions of documents in May spanning Bates numbers RF200121 – RF200786.  *Id*.

Before GT became involved in the action, Plaintiff had already filed a motion for contempt sanctions for RFT's failure to produce, among other things, RFT's ESI.

1   *Id,* ¶ 6.  The motion was filed despite RFT's agreement to make the ESI available.

2   *Id.*  Nevertheless, there was a great deal of urgency in making the ESI production,

3   not only because of the pending discovery motion, but because the depositions of

4   RFT and Bob Noorian were scheduled to take place in June.  *Id.*  As a result, GT

5   caused RFT's ESI production to be electronically searched for privilege using key

6   words.  *Id.*  59 terms included the names of attorneys, law firms, email addresses and

7   variations of spellings of each.  *Id.*  The privilege search terms also included the

8   terms confidential, privilege, council, counsel, attorney, lawyer, legal, privileged,

9   lawsuit, law firm, enjoin, judge, court, injunction, advice, law suit, litigation, law,

10  paralegal and privileged.  *Id.*  On or about May 27, 2014, GT made RFT's first ESI

11  production.  *Id.*  After making changes to the production due to a technical error, the

12  production consisted of Bates numbers RF200787 – RF328228.  *Id.*

13      The depositions proceeded as scheduled as did the litigation.  *Id., ¶ 7.*

14  Between May 27 and June 24, RFT produced seven additional volumes of

15  documents.  *Id.*  On June 26, 2014, GT made a motion to withdraw from the lawsuit.

16  *Id.*  LeClairRyan again assumed responsibility for taking the lead in discovery and in

17  making additional documents available to Plaintiff.  *Id.*  Following GT's departure,

18  LeClairRyan made four additional productions in July and August, bringing the total

19  number of volumes produced to 34.  *Id.*

20      On September 12, 2014, counsel for defendants received a letter from

21  Plaintiff's counsel that identified several emails that were produced by third parties

22  that should have been contained in RFT's ESI production.  *Id., ¶ 8.*  Counsel for

23  defendants investigated the matter raised by Plaintiff's counsel by searching the

24  document database and speaking with the vendor.  *Id.*  During the investigation,

25  counsel learned for the first time of the volume of documents that were withheld as a

26  result of the search terms that were used to separate privileged documents from

27  RFT's ESI production.  *Id.*  Counsel also learned for the first time that the term

28  "confidential" appeared in the footer of RFT's company emails and caused a large

1    volume of documents to be separated into the privileged folder in the ESI database.

2    *Id.*  Defense counsel explained these findings to Plaintiff's counsel during

3    subsequent meet and confer discussions.  *Id.*  Defense counsel indicated to Plaintiff's

4    counsel that the oversight was inadvertent and that production of the emails and ESI

5    would be forthcoming.  *Id.*

6          Following the conference with Plaintiff's counsel, defense counsel caused the

7    documents withheld due to the term confidential appearing in the footer of email

8    messages to be electronically searched for privilege using the 59 terms that included

9    the various attorney and law firm names described above.  *Id., ¶ 9.*  The results were

10   produced to Plaintiff on or around September 26, 2014.  *Id.*

11         While performing the subject privilege search counsel for defendants learned

12   for the first time that other non-attorney name privilege terms captured documents

13   that should have been produced.  *Id., ¶ 10.*  Given the nature of the documents

14   withheld and the content of the messages, defense counsel determined that these

15   documents had to be reviewed for privilege by reading them as opposed to simply

16   conducting electronic searches.  *Id.*  100's of hours of attorney and paralegal time

17   were required to complete the review and resulted in three additional productions

18   that were made on a rolling basis in October and November.  *Id.*

19         Counsel for defendants reasonably concluded that the productions of

20   documents between September and November 2014 had accounted for all of the

21   documents that Plaintiff's counsel indicated should have been previously produced

22   by RFT.  *Id., ¶ 11.*  It was not until Plaintiff filed its motion for sanctions on the last

23   day of discovery that defendants learned that Plaintiff's counsel thought otherwise.

24   *Id.*  After service of Plaintiff's motion for sanctions, defense counsel contacted the

25   vendor and asked them to investigate this matter for the second time.  *Id.*

26         Defendants' vendor, Setec Investigations, responded immediately and in

27   December 2014 evaluated the actual two hard drives delivered with the ESI and all

28   the original ESI provided by defendants and the 146 individual email accounts.  *See*

Stephan Decl., ¶ 7.  In reproducing tasks previously performed associated with the preparation and keyword searching of this email data, Setec Investigations uncovered that 14,596 email messages identified during the keyword searches as containing keyword matches and that were in the queue to be exported had not actually been exported onto the hard drive delivered to iDiscover LLC (the vendor who loaded the ESI for review by defense counsel).  *Id.*  The first time Setec Investigations learned that it had not provided the missing email messages, files and documents to iDiscover LLC was when it reproduced the tasks described herein in December 2014, and the first time Setec Investigations described to anyone the circumstances surrounding the missing email messages, files and documents, was shortly after learning the same in December 2014.  *Id.*  Accordingly, neither defendants nor their counsel had any reason to believe that all of the ESI responsive to HME's demands was not produced as of the Spring of 2014.

Specifically, one of the subjects of the motion for sanctions is a screen shot of "over a hundred emails" allegedly showing Mark Sullivan's distribution of the IQ Structural Failures" document.  Based upon counsel for defendants' review of the information that has recently been uncovered by Setec Investigations, it appears that there are 12,506 documents that contain the term "attune."  *See* Vanderhoof Decl., ¶ 12.  Mark Sullivan is identified as a drafter, sender or recipient on 178 of those documents.  *Id.*  Although defense counsel has not yet completed its review of all 12,506 documents containing the term "attune," it appears that many, if not all, of the materials that are the subject of the motion for sanctions can and will be produced in the near future.  *Id.*  Moreover, RFT's IT director has reviewed Mark Sullivan's laptop and confirmed that he was generally able to locate the documents referenced in the "screen shot," and further confirmed (to the extent possible given the nature of the "screen shot"), that all of the emails and email attachments he located on Mark Sullivan's laptop are within the ESI that he provided to Setec during the data grabs.  *See* Declaration of Stephen M. Combs filed concurrently herewith

and signed January 2, 2015, ¶¶ 2-3, and Declaration of Stephen M. Combs signed September 3, 2014, ¶ 14 (Exh. 2 to Herrera Decl.).

## C.   ARGUMENT

HME's specific requests for sanctions are on pages 24-38 of the Joint Motion above. Review of the specific requests confirms that only the two alleged facts discussed above are relevant to a determination of the propriety of the requests. The absence of those facts, shown by the testimony of Mr. Noorian and the declarations submitted in support of defendants' portion of this Joint Motion, and discussed more particularly below, confirms that HME is not entitled to any of the relief it seeks.

### 1.   Alleged Failure to Produce Documents Related to the IQ Structural Failures Document.

On page 24 of the Joint Motion above, HME alleges that "RFT's failure to produce documents related to the libelous Structural Failures document and average rate of repair and cost information for the ION IQ, in direct contravention of both Judge McCurine's discovery order and Judge Burkhardt's discovery order, warrants issue sanctions and evidentiary sanctions against both RFT and Mr. Noorian." This allegation is false. As discussed more particularly above, RFT provided all of its ESI to its discovery vendor early in the discovery process and that data included "all emails and other communications regarding the "HM Electronics IQ Structural Failures" document. *See* Declaration of Stephen M. Combs In Response to the Court's Discovery Order, signed September 3, 2014, ¶¶ 14, 16 and 17 (Exh. 2 to Herrera Decl.). As discussed above, all of the subject information was produced during discovery in this matter, or to the extent it has been produced recently or is in the process of production, such delay was the result of error by the vendor loading the raw data into the research software, and not as a result of any conduct by RFT or its attorneys. *See* Stephan Decl., ¶¶ 4-9, Vanderhoof Decl., ¶¶ 4-12.

Furthermore, during the meet and confer with regards to this Joint Motion, RFT offered to give a deposition pursuant to Federal Rule of Civil Procedure

1    30(b)(6) for HME to test all of the allegations in the Joint Motion.  *See* Dkt. 243.

2    Mr. Noorian appeared for that deposition on December 18, 2014. ███████████

3    ███████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ██████████████████████████████████████  *See* Noorian Depo Tr., 77:24-

6    78:17. █████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████

8    ████████████████████████████████████  *Id*., 78:18-20.  In fact, the

9    subject e-mails are in the data grab that RFT completed and provided to the vendor.

10   *See* Combs Decl. dated September 3, 2014, ¶ 14 (Exh. 2 to Herrera Decl.); Combs

11   Decl. dated January 2, 2015, ¶¶ 2-3, Vanderhoof Decl., ¶ 12.  Unfortunately, the

12   subject e-mails are among the less than 1% of the relevant documents that were not

13   loaded by the vendor into the search database, but which now have been produced.

14   *See* Stephan Decl. ¶¶ 4-9.  Mr. Noorian's response completely undermines HME's

15   attempt to show intent to destroy or withhold information.  The information was in

16   the data grab, just as Mr. Noorian assumed it should have been if it existed.  All of

17   the subject information will be produced in the near future.  *See* Vanderhoof Decl., ¶

18   12.

19        Counsel for HME also explored its spoliation claims at the deposition on

20   December 18, 2014, and the deposition confirmed that no relevant information had

21   been deleted. ████████████████████████████████████████████████

22   ██████████████████████████████████████████████████████

23   ████████████████████████████

24   ██  ████████████████████████████████████████████

25   ████████████████████████████████████████████████

26   ██████████████████████████████████████

27   ██  █████████████████████████████████████████████████

28   ████████████████████████████████████████



Noorian Depo. Tr.: 79:5-14.

Noorian Depo. Tr.: 80:1-4.

Noorian Depo. Tr.: 13:10-13.

Noorian Depo. Tr.: 36:13-20.

Accordingly, there is not basis upon which to impose issue or evidentiary sanctions against RFT and Mr. Noorian.

**2.  Alleged Intentional Withholding of Documents Relevant to RFT's False Statements**

On Page 25 of the Joint Motion above, HME states that "RFT designed the Structural Failures document to appear as if it were a quality control document generated by HME" that the representations it made to potential customers about it

were false, and "RFT's distribution of unsupported, speculative and false statements regarding HME's ION IQ headset, and *intentional withholding of documents relevant to RFT's false statements*, warrant an issue determination sanction.  HME should not be forced at trial to prove facts RFT and Mr. Noorian knew to be true, but withheld."

The only portion of this request for sanctions that matters for purposes of determining if an evidentiary sanction is warranted is the allegation that RFT "intentionally withheld" the subject information from production.  As discussed above, RFT did not intentionally withhold anything from production.  *See* Stephan Decl., ¶¶ 4-9, Vanderhoof Decl., ¶¶ 4-12, Combs Decl., signed September 3, 2014, ¶ 14 (Exh. 2 to Herrera Decl.), Combs Decl., signed January 2, 2015, ¶ 2.

### 3.    Alleged "Selective" Production of Emails Regarding the Distribution of the IQ Structural Failures Document

On Page 26 of the Joint Motion above, HME states "RFT and Mr. Noorian have feigned ignorance regarding the false Structural Failures document and the manufactured average repair rate information," "RFT claimed in sworn discovery responses that Mr. Sullivan was the 'only person' with knowledge to whom, if anyone, the Structural Failures document was distributed" and "RFT selectively produced e-mails in an effort to avoid culpability for its distribution of these libelous materials."  HME alleges that, in light of the foregoing, "the Court should determine RFT and Mr. Noorian's knowledge of both the creation and distribution of the Structural Failures document and average repair rate information as established facts."

There is simply no evidence that Defendants selectively produced e-mails and deliberately withheld others until later.  HME's allegation is based on conjecture and speculation.  The subject e-mails that HME describes in Section 8 starting at Page 21, should not be judged through HME's skewed spectacles, when HME incorrectly characterizes every delay in this action as calculated by defendants.  RFT and

Noorian have already established they did not intentionally destroy any evidence whatsoever, and also did not intentionally delay providing other relevant information.  RFT produced over 1 million pages of information.  The small fraction of that information that was produced recently does not support inferences of misconduct.  Moreover, this scenario only illustrates the benefit of having ESI searches handled by professionals rather than untrained individuals trying to conduct individual searches.  It does not substantiate a nefarious purpose.

### 4. Alleged "Destruction" of Information Regarding "Widespread Dissemination" of the IQ Structural Failures Report

On Page 28 of the Joint Motion above, HME proclaims it is entitled to an issue preclusion instruction that defendants may not assert HME was not damaged by the IQ Structural Failures Report because of:

> "The widespread dissemination of false information regarding HME's ION IQ cannot be overemphasized here.  Mr. Sullivan testified to sending over 100 e-mails including the Structural Failures document and average repair rate information. ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████  RFT and Mr. Noorian's spoliation of evidence and otherwise gross dereliction of their disclosure obligations have made it exceedingly difficult for HME to identify sales it may have lost as a result of the false and defamatory materials RFT distributed, because Defendants have prevented HME from identifying all recipients.  As a result of Defendants' discovery abuses, HME does not know the true scope of RFT's distribution of these materials, and likely never will."

Again, Mr. Noorian did not instruct Mr. Sullivan to "destroy that evidence" consisting of the 100 e-mails showing "widespread dissemination."  Mr. Noorian instructed Mr. Sullivan to destroy his duplicate copy of the IQ Structural Failures Report.  None of the subject e-mails have been lost.  There is no basis for a request

for an issue sanction.  Moreover, HME's claims that they have been prevented from identifying all recipients are belied by the representations it made in opposition to HME's motion for partial summary judgment.  *See* HME's Memorandum of Points and Authorities requested to be filed under seal under Docket 247 (In the Introduction HME alleges "HME identified hundreds of economic relationships in interrogatory responses" to support its claim for Intentional Interference with Prospective Economic Advantage, and discussed those relationships all through its Statement of Facts.  HME's claim for Intentional Interference with Prospective Economic Advantage relies, in part, on the customers and potential customers' exposure to the IQ Structural Failures Report.  *See* FAC, ¶¶ 23-26 and 68, Dkt. 156.)

### 5.   Alleged Withholding or Destruction of Evidence Undermining Affirmative Defenses

On page 29 of the Joint Motion above, HME alleges that the Court should strike defendants' First, Ninth and Fourteenth Affirmative Defenses "as they relate to HME's Fifth Cause of Action for Trade Libel and Second Cause of Action for Unfair Competition under the Lanham Act (as it relates to the Structural Failures document and the average repair rate information)."  HME's sole basis for this request is consistent with its sole bases for all the other requests discussed above:  "Defendants should not be permitted to simultaneously assert affirmative defenses and deny HME evidence that undermines these defenses."

As set forth above and in the accompanying declarations, defendants have not denied HME any evidence and certainly no evidence that "undermines these defenses."  Past delays, meeting and conferring and prior discovery orders are also no basis for granting the subject request.  Any improprieties of defendants have already been addressed by the Court and do not need to be redressed again.  The relevant inquiry is whether or not defendants have violated Judge Burkhardt's order to produce the subject information.  Defendants produced over 1 million pages of ESI.  The less than 1% about which HME complains was produced towards the end

1  of the discovery period and recently, but not through any fault of defendants or its

2  lawyers.

3      Moreover, HME's claims that it has been prejudiced by the late production of

4  anything are belied by its approach to the deposition of RFT pursuant to Federal

5  Rule of Civil Procedure 30(b)(6) which it took on December 18, 2014.  Defendants

6  specifically offered the deposition so that HME could inquire about any of the issues

7  raised in the subject motion for discovery sanctions, including the 100,000 pages of

8  ESI produced "late" beginning in September 2014.  HME questioned Mr. Noorian on

9  only a handful of those documents.  HME was not interested in curing any so called

10 prejudice.  It was only interested in bolstering its position in this Joint Motion which

11 is almost wholly unchanged from its original motion served before the deposition.

12          **6.    There Is No Basis for a "Rebuttable Presumption" that RFT's
                    False Statements Were a Substantial Factor in RFT's Sales of
13                  the Panasonic Attune**

14     On page 30 of the Joint Motion above, HME asks for a "rebuttable

15 presumption that RFT's distribution of the Structural Failures document and average

16 repair rate information, ███████████████████████████████

17 were a substantial factor in RFT's sales of Panasonic Attune systems during the

18 period May 1, 2012 to the present."  HME states the basis for this request is that

19 "Defendants should not be permitted to assert HME has not been damaged by the

20 Structural Failures document or average repair rate information when RFT destroyed

21 evidence, failed to preserve evidence, or otherwise withheld, failed or refused to

22 produce documents that would refute that claim."

23     HME has no basis for the requested rebuttable presumption.  Defendants did

24 not destroy evidence.  HME has all the relevant information that was in defendants'

25 possession, custody or control and will have a small additional piece shortly.

26 Defendants did not intentionally withhold any information or fail to preserve any

27 relevant information.  Defendants have not produced documents that would "refute"

28 that "HME has not been damaged by the Structural Failures document or average

repair rate information," because defendants do not have documents that refute its claim that HME has not been damaged.

In addition, it is overreaching to contend that HME should receive a rebuttable presumption that the distribution of the IQ Structural Failures document was a substantial factor of all of the revenues of the sales of Panasonic.  HME is seeking a punishment that does not match the allegations of the misconduct even if all the facts of the misconduct as alleged were true, which they are not.  It is HME's duty to prove its damages.  Defendants have done nothing to prevent HME from doing so. HME is being opportunistic, seizing upon the late production of information, which did not prejudice it, and trying to exact there from a sanction that is inappropriate.

### 7.    An Adverse Inference Instruction is Unwarranted

On pages 31-33 of the Joint Motion above, HME requests "an adverse inference instruction that (1) relevant documents Defendants failed to timely produce, or to produce at all, are harmful to Defendants, and (2) Defendants were aware of the falsity of the Structural Failures document and the average repair rate information, and encouraged distribution of the same."  This request is similar to its request above on page 26 of the Joint Motion for the Court to "determine RFT and Mr. Noorian's knowledge of both the creation and distribution of the Structural Failures document and average repair rate information as established facts."  It should fail for the same reasons identified above.  The sole basis for HME's request for a recommendation to the District Judge for an adverse inference instruction is defendants "destroyed or failed to timely produce evidence" with a "culpable state of mind."  *See* page 31 above.

Defendants did not destroy anything.

Defendants did not untimely produce any evidence with any "culpable" state of mind.  Defendants timely provided all of their ESI to the discovery vendor. Unfortunately, the discovery vendor did not properly load all of the information into the search database.  Less than 1% of the subject information was produced late.

1   These facts do not show any culpability of defendants.  On the contrary, defendants

2   cooperated and gathered a huge volume of information.  As HME admits in the Joint

3   Motion, defendants produced over 1 million pages of ESI responsive to HME's

4   demands.  This was a tremendous burden to accomplish.  The volume was

5   astronomical and took vendors and third parties days to manage it and prepare it for

6   production.  An honest mistake was made in the process.  HME should not just be

7   handed the requested finding, on a key issue, which is difficult to prove under all

8   circumstances, and certainly should not be given such a finding when the

9   "culpability" is based on conjecture and rhetoric.

10       Finally, HME claims that defendants have failed to fulfill their "duty to

11   preserve ESI."  That is also incorrect.  HME deposed Mr. Noorian and specifically

12   asked him about its preservation of ESI from the time the litigation arose.  ███

13   ████████████████████████████████████████████████

14   ███████████   Noorian Depo. Tr.: 13:10-13.  ████████████████

15   ████████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   █████████████   Noorian Depo. Tr.: 36:13-20.  In addition, the 1 million pages of

18   ESI defendants produced completely undermines HME's claims that defendants

19   failed to preserve its information.  That production included the relevant e-mails

20   from 146 individual email accounts.  *See* Combs Decl., September 3, 2014, ¶ 14,

21   Exh. B (Exh. 2 to Herrera Decl.).

22       Accordingly, there is no basis upon which to recommend an adverse inference

23   instruction on the subject issue.

24       **8.    There Is No Basis to Recommend a Finding of Contempt.**

25       On pages 33 and 34 of the Joint Motion above, HME requests a

26   recommendation to the District Judge finding defendants in contempt of Court.  As

27   set forth above and in the accompanying declarations, defendants complied with the

28   subject court orders by timely providing all of its ESI responsive to the subject

demands to its vendor for production.  Defendants and its attorneys had no way of knowing that a small fraction of the subject information was inadvertently omitted from the vendor's upload to the search database.  Considering the large volume of information and the technical issues involved, defendants' 100% compliance with the subject discovery orders was not possible without reliance on ESI professionals.  Defendants did their part.  The ESI professionals made a mistake.  This is not a good basis for imposing contempt on defendants.  In any event, even the lone remaining small portion of the ESI which was not uploaded is now ready for production and production will be completed in the near future.  The information about which HME complains in the Joint Motion is among that which is found in the last batch.  There is nothing left upon which to issue an order of contempt.

### 9.    Mr. Noorian's Deposition Cleared Up All Remaining Issues

At pages 34-38 of the Joint Motion above, HME summarizes large portions of the Noorian deposition given on December 18, 2014.  The deposition confirms all of the representations defendants have made in their portion of this Joint Motion.  The most telling of the representations is the one that has now also been confirmed by the ESI vendor. ███████████████████████████████████████

███████████████████████████████████  *See* Noorian Depo Tr., 77:24-78:17. ███

████████████████████████████████████████████████████

████████████████  *Id*., 78:18-20.  The subject e-mails are in the data grab that RFT completed and provided to the vendor.  *See* Stephan Decl., ¶¶ 4-9, Vanderhoof Decl., ¶¶ 4-12, Combs Decl., signed September 3, 2014, ¶ 14 (Exh. 2 to Herrera Decl.), Combs Decl., signed January 2, 2015, ¶ 2.  Mr. Noorian's response completely undermines HME's attempt to show intent to destroy or withhold information.  The information was in the data grab, just as Mr. Noorian assumed it should have been if it existed. Mr. Noorian's deposition cleared up all remaining issues.  HME never should have filed the instant motion.  Unfortunately, it was already prepared even before the deposition so HME went ahead and filed it.

**10.    HME is Not Entitled to an Award of Expenses.**

At page 38 of the Joint Motion above, HME requests expenses as a further sanction.  HME correctly notes that an award of expenses is inappropriate if defendants show that any "failure to comply was substantially justified or other circumstances make an award unjust."  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. Cal. 1994).  First, as discussed, defendants did not fail to comply.  In the alternative, to the extent the mistakes of the ESI vendor could be attributed to defendants, all the relevant circumstances demonstrate that a monetary award of expenses would be unjust.  RFT did not intentionally destroy evidence relevant to HME's claims or intentionally delay providing other relevant information.

**11.    The Court Should Not Impose Any Sanctions**

In considering whether to impose sanctions at all where spoliation is *proven* (let alone where it is merely alleged as in this case), courts generally consider three factors:  "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'"  *Nursing Home Pension Fund v. Oracle Corp.,* 254 F.R.D. 559, 563 (N.D.Cal.2008) (quoting *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994)); *see In re Napster,* 462 F.Supp.2d at 1066–67.  "[A] party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *In re Napster,* 462 F.Supp.2d at 1066–67 (citing *Baliotis v. McNeil,* 870 F.Supp. 1285, 1291 (M.D.Pa.1994)).

In other words, in ruling on a request for sanctions such as those posed by HME, a court should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid,* 13 F.3d at 79.  "Ultimately, the choice of appropriate spoliation sanctions must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence." *Apple Inc. v. Samsung*

1  *Electronics Co.*, 888 F. Supp. 2d 976, 992-93 (N.D. Cal. 2012), citing *Unigard*

2  *Security,* 982 F.2d at 368; *In re Napster,* 462 F.Supp.2d at 1066–67.  For example,

3  "[c]onsistent with this principle, some courts have denied requests for an adverse

4  inference instruction even where the three-part test for spoliation was satisfied, upon

5  concluding that the degree of fault and level of prejudice were insufficient to justify

6  imposition of the sanction. *See Chin v. Port Auth. of New York & New Jersey,* 685

7  F.3d 135, 161-162 (2d Cir.2012).

8  If deletion of *duplicate* copies of the IQ Structural Failures document is even

9  fairly characterized as "spoliation," and if there is any fault whatsoever to be

10 assigned to defendants for it—such fault is minimal considering the motive was ██

11 ████████████████████████████████ and also considering that the

12 original information was preserved and produced, and HME was well aware of its

13 contents from the beginning of the issues between the parties, HME having alleged

14 the IQ Structural Failures document in the Complaint and First Amended Complaint.

15 For these same reasons, the degree of prejudice suffered by HME is minimal,

16 especially in light of the discovery that none of the e-mails to third parties regarding

17 the IQ Structural Failures document were deleted and they are included in the "data

18 grab" defendants provided to their vendor.

19 There is also a "lesser sanction that will avoid substantial unfairness" to RFT.

20 Rule 37(b)(2)(A)(iv) also provides that the Court may "stay[] further proceedings

21 until the order is obeyed."  If HME needs time to consider the last less than 1% of

22 ESI, then the Court has the authority to stay these proceedings to allow it to do so.

23 **D.   CONCLUSION**

24 Defendants respectfully request that the Court deny HME's request for

25 evidentiary and other sanctions and the subject recommendations to the District

26 Court.

1    Dated:  January 6, 2014

2                                    PILLSBURY WINTHROP SHAW PITTMAN LLP

3                                    By */s/ Michelle A. Herrera*

4                                         Callie A. Bjurstrom
                                          Michelle A. Herrera
5                                         Attorneys for HM Electronics, Inc.

6    Dated:  January 6, 2015          ARENT FOX LLP

7

8                                    By:  */s/ David Bayles*

9                                         STEPHEN G. LARSON
                                          ALLAN E. ANDERSON
10                                        DAVID BAYLES
                                          Attorneys for Defendants
11                                        R.F. TECHNOLOGIES, INC. AND BABAK
                                          NOORIAN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28