| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| HM ELECTRONICS, INC., a California corporation, | Case No. 12-cv-2884 BAS (MDD) |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | **[ECF 232]** |
| R.F. TECHNOLOGIES, INC., an Illinois corporation, | |
| Defendant. | |

Presently before the Court is Defendant R.F. Technologies, Inc.'s ("RFT") motion for partial summary judgment. ECF 232. The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the reasons set forth below, the court **DENIES** Defendant's motion. ECF 232.

## I. BACKGROUND

HM Electronics ("HME") is a prominent figure in the Quick Service Restaurant industry. Haas Decl. ¶ 16, ECF 35-2. Among other things, Plaintiff manufactures wireless drive-thru headsets and provides repair services for its products. *Id.* Defendant repairs and refurbishes drive-thru headsets, including Plaintiff's. Noorian Decl. ¶¶ 2, 5, ECF 40-1. Defendant is not an authorized seller or repair service for Plaintiff's headsets. Haas Decl. ¶ 23.

After repairing Plaintiff's headsets, it was Defendant's practice to dispose of the HME casings and replace them with RFT-branded casings. Haas Decl. ¶ 29. This has purportedly caused customer confusion, which has resulted in customers mistakenly sending their headsets to Defendant for repair instead of Plaintiff. *Id.* at ¶¶ 30–33. Additionally, Plaintiff states Defendant engages in a "bait and switch" by advertising HME products for sale and shipping customers RFT-manufactured products instead. *Id.* at ¶ 27. Plaintiff brought this suit against Defendant alleging injury to its trademark. *See* FAC ¶¶ 8–10, 34, 36–42, ECF 156.

## II. LEGAL STANDARD

Summary judgment is appropriate on "all or any part" of a claim if there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("*Celotex*"). A fact is material when, under the governing substantive law, the fact could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *See Celotex,* 477 U.S. at 323–24.

The moving party bears the initial burden of establishing the absence of a

genuine issue of material fact. *See Celotex,* 477 U.S. at 323. "The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citing *Celotex*, 477 U.S. at 324).

"[W]hen the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case." *Miller*, 454 F.3d at 987 (citing *Celotex,* 477 U.S. at 325). "Thus, '[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Miller*, 454 F.3d at 987 (quoting *Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 805–06 (1999) (internal quotations omitted)).

A genuine issue at trial cannot be based on disputes over "irrelevant or unnecessary facts[.]" *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). Similarly, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson,* 477 U.S. at 252).[1] The party opposing summary judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P 56(e)). That party cannot "rest upon the mere allegations or denials of [his or her] pleadings." Fed. R. Civ. P. 56(e).

When making its determination, the Court must view all inferences drawn

---

[1] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (if the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts").

from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

#### A. *Plaintiff's Claim for Intentional Interference with Prospective Economic Advantage*

Defendant argues Plaintiff's sixth cause of action for intentional interference with prospective economic advantage should be dismissed because Plaintiff has not identified any economic relationship with a third party with which Defendant interfered. Def.'s Mot. 8–9.

Plaintiff must prove "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enters. Inc.*, 479 F.3d 1099, 1107–08 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003)). The relationship must already exist and may not be speculative. *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994). Defendant challenges only on the grounds that no such relationships have been identified. Def.'s Mot. 9:1–16.

Plaintiff's Rule 26(a)(1) initial disclosures listed witness contact information for Dunkin' Brands, Northshore Management, and McDonald's, together with the statement that the witnesses possessed information concerning "[Defendant's] intentional interference with [Plaintiff's] economic relationships with its customers and prospective customers." Vanderhoof Decl. Ex.A, 7, 11–12, ECF 232-3. In

Defendant's first set of interrogatories, Defendant asked Plaintiff to "IDENTIFY all HM Electronics economic relationships which were interfered or disrupted as a result of any conduct by RF Technologies, its employees or management." Herrera Decl. Ex. 1, 13, ECF 250-1. Plaintiff provided the names of thirty-one individuals and contact information for twenty-four of them. *Id.* at 13–14. Plaintiff further provided an email chain in which an HME representative attempted to persuade a Dairy Queen owner that Defendant provided misinformation. *Id.*, Ex. 4 (HME: "I understand that you need to do what you think is right for your company. . . . If you decide to go with the RF tech, we will understand.").

Plaintiff has sufficiently identified third-party relationships with which Defendant possibly interfered. Defendant has not proved entitlement to summary judgment because Plaintiff has provided evidence to support its claim. Def.'s Reply 4. Determining whether this evidence meets Plaintiff's burden is therefore delegated to the fact finder. *Anderson*, 477 U.S. at 255. Accordingly, Defendant's motion is **DENIED** insofar as it relates to Plaintiff's cause of action for intentional interference with prospective economic advantage.

### B. *Plaintiff's Prayer for Corrective Advertising Damages*

"An award of the cost of corrective advertising, like compensatory damage awards in general, is intended to make the plaintiff whole. It does so by allowing the plaintiff to recover the cost of advertising undertaken to restore the value plaintiff's trademark has lost due to defendant's infringement." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (citing *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992)). "A plaintiff need not show a specific measure of harm to its goodwill and reputation in order to recover corrective damages." *Quia Corp. v. Mattel, Inc.*, No. C 10–1902, 2011 WL 2749576, at *4 (N.D. Cal. July 14, 2011) (citing *Adray*, 76 F.3d at 988). "However, compensatory damages are appropriate only where a plaintiff has shown that in fact it has been injured; it still must present non-speculative evidence that goodwill and reputation—that is, the

1  value of its mark—was damaged in some way." *Id.* (citation omitted).

2  The record contains voluminous evidence of Defendant's conduct regarding Plaintiff's products. A fact finder could reasonably find that Plaintiff's trademark was damaged and that Defendant therefore owes Plaintiff compensatory damages.

Defendant argues that *Adray*, 76 F.3d at 989, requires corrective advertising damages to not exceed the value of the relevant trademark, and since Plaintiff has not introduced any evidence valuing its trademark, Plaintiff cannot recover these damages. Def.'s Mot. 9–12. There are multiple ways to value a trademark. *See* Kennedy Decl. ¶¶ 16–18, ECF 297. Under the "cost approach" the value of the trademark is the cost of creating or obtaining the trademark, which includes, among other things, marketing and advertising costs. Michael J. Freno, *Trademark Valuation: Preserving Brand Equity*, 97 Trademark Rep. 1055, 1058 (2007). "In a sense, advertising costs most accurately reflect trademark value: the more one advertises a mark, the more public recognition inures to the mark, which increases its value." *Id.* at 1058–59.

One of the methods for calculating corrective advertising damages is to award the injured party 25% of the defendant's relevant advertising costs. *See Int'l Oddities v. Record*, No. CV 12–3934, 2013 WL 3864050, at *14 (C.D. Cal. 2013); *Adray*, 76 F.3d at 988. Defendant's argument overlooks the fact that 25% of its advertising for HME products can never be more than the value of HME's trademark under the cost approach. Defendant cannot spend more money advertising the HME brand than what Defendant believed the brand to be worth.

Plaintiff's damages expert calculated 25% of Defendant's advertising expenses to be approximately $960,000. *See* Kennedy Decl. ¶ 16–17; Pl's Opp'n 15–16. Given that Plaintiff is highly prominent in the QSR industry and has itself invested more than $5 million in advertising over the last several years, 25% of Defendant's relevant advertising costs appears to be lower than the trademark's value. *See* Haas Decl. ¶ 16, ECF 35-2. Since there is at least one viable method for

determining corrective advertising damages, Plaintiff's prayer for corrective advertising need not be dismissed at this time.

**IV. CONCLUSION**

Accordingly, the Court **DENIES** Defendant's motion for partial summary judgment. ECF 232.

**IT IS SO ORDERED**.

DATED: April 17, 2015

Hon. Cynthia Bashant
United States District Judge